811 N.E.2d 692 (2004)
349 Ill.App.3d 445
285 Ill.Dec. 205
EAST ST. LOUIS SCHOOL DISTRICT NO. 189 BOARD OF EDUCATION, Lonzo Greenwood, Joseph Lewis, Khalil El-Amin, Irma Golliday, Lavondia Neely, Kinnis Williams, Sr., and George Mitchom, Plaintiffs-Appellees,
v.
EAST ST. LOUIS SCHOOL DISTRICT NO. 189 FINANCIAL OVERSIGHT PANEL, Defendant-Appellant.
No. 5-03-0305.
Appellate Court of Illinois, Fifth District.
Rule 23 Order Filed April 16, 2004.
Motion to Publish Granted May 27, 2004.
Opinion Filed May 27, 2004.
*695 Michael J. Nester, Donovan, Rose Nester & Joley, P.C., Belleville; Lorilea Buerkett, Brown, Hay & Stephens, Springfield, for Appellant.
Garrett P. Hoerner, Becker, Paulson, Hoerner & Thompson, P.C., Belleville, for Appellees.
Justice WELCH delivered the opinion of the court:
In these consolidated appeals, the Financial Oversight Panel for East St. Louis *696 School District No. 189 (Oversight Panel) appeals from decisions of the circuit court of St. Clair County declaring that the Oversight Panel had acted arbitrarily and capriciously in rejecting a proposed contract between the Board of Education of East St. Louis School District No. 189 (School Board) and the architectural firm of Kennedy and Associates, Inc. (KAI); declaring invalid, and enjoining the Oversight Panel from enforcing, its Directive 03-1(a), which directed the School Board to negotiate an appropriate contract with an architectural firm other than KAI or face disciplinary action, including the possible removal of members from office; and ordering the Oversight Panel to approve and execute the School Board's proposed contract with KAI. Because the trial court's finding that the Oversight Panel acted arbitrarily and capriciously in rejecting the proposed contract between the School Board and KAI is contrary to the manifest weight of the evidence, we reverse the orders of the circuit court of St. Clair County.
In July 2002, the School Board submitted to the Oversight Panel for its approval a proposed contract between the School Board and KAI for architectural and engineering services in connection with the construction of two new school buildings. On July 31, 2002, the Oversight Panel rejected the proposed contract for the stated reason that KAI was not prequalified with the Capital Development Board (CDB), as required. When KAI subsequently received temporary or conditional prequalification from the CDB, the Oversight Panel again rejected the proposed contract in October 2002, because that prequalification was "probationary."
On November 7, 2002, the Oversight Panel issued its Directive 03-1, directing the School Board to conduct a search for an architectural and engineering firm to work on the two school construction projects. The School Board complied with Directive 03-1, and five firms were selected to interview with an unofficial committee composed of representatives of several interested bodies, including both parties hereto. That committee ranked KAI second and Wm. B. Ittner, Inc. (Ittner), first. Nevertheless, the School Board, in official action at its next meeting, ranked KAI first and Ittner second. Accordingly, the School Board negotiated a contract with KAI and submitted it to the Oversight Panel for approval. On January 29, 2003, the Oversight Panel rejected this contract as well and issued its Directive 03-1(a), directing the School Board to negotiate an appropriate contract with a firm other than KAI. Directive 03-1(a) also provided that, if the School Board failed or refused to act in accordance with the directive, the Oversight Panel would initiate disciplinary action against the School Board, which could include the removal of School Board members from office.
On February 5, 2003, the School Board filed, in the circuit court of St. Clair County, an amended complaint,[1] count III of which seeks a declaratory judgment that the Oversight Panel had acted in violation of and outside the scope of its authority in rejecting the proposed contract between the School Board and KAI, a declaratory judgment that Directive 03-1(a) is invalid, and an injunction against the Oversight Panel enforcing its Directive 03-1(a) or instituting disciplinary action against the School Board or its members.[2]
*697 In its pretrial memorandum to the court, the Oversight Panel argued that what the School Board was really seeking in its complaint was judicial review of an administrative decision, which could only be had pursuant to a writ of certiorari based on the record of the administrative proceedings, and not on a de novo evidentiary trial before the court. The trial court rejected this argument, pointing out that by statute the Oversight Panel had the power to sue and be sued and finding that the School Board's complaint was not one for administrative review but was an independent action seeking a declaratory judgment and an injunction. Accordingly, a de novo evidentiary trial was held.
The Oversight Panel's first argument on appeal is that this ruling by the trial court was erroneous as a matter of law. The Oversight Panel points out that it is an administrative agency and argues that its status controls the analysis herein  as an administrative agency, its decisions are subject only to administrative review. We disagree. It is not the status of the agency that controls whether judicial review of its action is appropriate or available, but it is the nature of the action or decision taken that controls.
The parties agree that the Administrative Review Law (735 ILCS 5/3-101 et seq. (West 2002)) does not apply to decisions made by the Oversight Panel, because the statute creating and empowering the Oversight Panel (105 ILCS 5/1B-1 et seq. (West 2002)) does not so provide. If the statute creating or conferring power on an administrative agency does not contain an express reference to the Administrative Review Law and provides for no other form of review, then common law certiorari is a general method for reviewing the action of agencies and tribunals exercising administrative functions. Smith v. Department of Public Aid, 67 Ill.2d 529, 541, 10 Ill.Dec. 520, 367 N.E.2d 1286 (1977). Where a final administrative decision has been rendered and the circuit court may grant the relief that a party seeks within the context of reviewing that decision, the circuit court has no authority to entertain independent actions regarding the actions of an administrative agency. Stratton v. Wenona Community Unit District No. 1, 133 Ill.2d 413, 427-28, 141 Ill.Dec. 453, 551 N.E.2d 640 (1990). However, we agree with the trial court that certiorari is a wholly inappropriate vehicle for the type of relief sought by the School Board in this case because the Oversight Panel was not acting in a quasi-judicial role in rejecting the contract with KAI and issuing its Directive 03-1(a) and there is no final administrative decision of the Oversight Panel for review.
The common law writ of certiorari provides an avenue of appeal from an action by a court or other tribunal exercising quasi-judicial functions. American Federation of State, County & Municipal Employees, Council 31, AFL-CIO v. Department of Central Management Services, 288 Ill.App.3d 701, 710-12, 224 Ill.Dec. 377, 681 N.E.2d 998 (1997) (American Federation). Quasi-judicial proceedings are designed to adjudicate disputed facts in a particular case. American Federation, 288 Ill.App.3d at 711, 224 Ill.Dec. 377, 681 N.E.2d 998. Quasi-judicial hearings concern agency decisions that affect a small number of persons on individual grounds based on a particular set of disputed facts that have been adjudicated. American Federation, 288 Ill.App.3d at 711, 224 Ill.Dec. 377, 681 N.E.2d 998. It is only in this type of proceeding that a sufficient record is developed in the administrative *698 agency to allow review by a writ of certiorari. The purpose of the writ is to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, that the inferior tribunal proceeded according to the applicable law. American Federation, 288 Ill.App.3d at 710, 224 Ill.Dec. 377, 681 N.E.2d 998. Therefore, generally, judicial review of an agency action can only occur where there has been a final agency determination, which usually follows some sort of adversarial proceeding involving the parties, a hearing on the controverted facts, and an ultimate disposition rendered by an impartial fact finder. Board of Trustees of Addison Fire Protection District No. 1 Pension Fund v. Stamp, 241 Ill.App.3d 873, 881, 181 Ill.Dec. 800, 608 N.E.2d 1274 (1993).
Administrative agencies can also act in a quasi-legislative manner, which actions are not subject to review by a writ of certiorari. American Federation, 288 Ill.App.3d at 712, 224 Ill.Dec. 377, 681 N.E.2d 998; City of Highwood v. Obenberger, 238 Ill.App.3d 1066, 1075, 179 Ill.Dec. 65, 605 N.E.2d 1079 (1992). Quasi-legislative proceedings are designed to promulgate policy-type rules or standards and involve general facts affecting everyone. No individual rights are at stake in a quasi-legislative proceeding. American Federation, 288 Ill.App.3d at 711, 224 Ill.Dec. 377, 681 N.E.2d 998. A hearing conducted in a quasi-legislative proceeding is intended to be an information-gathering forum in pursuit of legislative facts, rather than an adversarial adjudication of the rights of the individual. American Federation, 288 Ill.App.3d at 711, 224 Ill.Dec. 377, 681 N.E.2d 998. Quasi-legislative actions of an administrative agency can be reviewed in a declaratory judgment action if it is alleged that the action is unlawful. Woolfolk v. Board of Fire & Police Commissioners of Village of Robbins, 79 Ill.App.3d 27, 29, 34 Ill.Dec. 551, 398 N.E.2d 226 (1979).
The action of the Oversight Panel in rejecting the KAI contract and issuing its Directive 03-1(a) is more akin to a quasi-legislative action than it is to a quasi-judicial action. There was no adjudicatory hearing held to determine individual rights or disputed facts. Indeed, there was no hearing at all on the disputed facts raised in the School Board's complaint for declaratory relief and injunction. Accordingly, there is an insufficient record on which a reviewing court could base a determination regarding the propriety of the Oversight Panel's action. In a case such as this, review by a writ of certiorari is wholly inappropriate. See Sturm v. Block, 72 Ill.App.3d 306, 310-11, 28 Ill.Dec. 553, 390 N.E.2d 912 (1979).
We are supported in our decision by the only two reported decisions challenging actions of the Oversight Panel, one of which, like the case at bar, challenged the Oversight Panel's rejection of a proposed contract. East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel, 178 Ill.2d 399, 227 Ill.Dec. 568, 687 N.E.2d 1050 (1997). In that case, as in the case at bar, the action was commenced by the filing of a complaint for a declaratory judgment and injunctive relief. The Oversight Panel had rejected a proposed employment contract with the superintendent of the school district and directed the School Board not to enter into the contract or it would face disciplinary action. The School Board voted not to follow the directive; the Oversight Panel voted to remove the School Board members from office. The School Board filed a complaint for a declaratory judgment and an injunction against their removal from office. The case proceeded as an action for a *699 declaratory judgment and injunctive relief. On appeal to the Illinois Supreme Court, the court confirmed that the case was not appropriate for judicial review. East St. Louis Federation of Teachers, Local 1220, 178 Ill.2d at 426, 227 Ill.Dec. 568, 687 N.E.2d 1050.
The case of East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel, 311 Ill.App.3d 987, 244 Ill.Dec. 324, 725 N.E.2d 797 (2000), a challenge to the Oversight Panel's hiring of employees to perform school district work, also proceeded as a declaratory judgment action.
Our position is also supported by the definition of "administrative decision" contained in section 3-101 of the Administrative Review Law:
"`Administrative decision' or `decision' means any decision, order[,] or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties[,] or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2000).
Although, as the parties agree, this statute does not apply to the case now before us, we believe that we can still gain guidance from its language. The rejection by the Oversight Panel of the KAI contract and the issuance of its Directive 03-1(a) neither affects the legal rights, duties, or privileges of the parties, that is, the School Board and/or its individual members, nor terminates the proceedings before the administrative agency. The proceedings before the administrative agency will only terminate when the School Board complies with Directive 03-1(a) or when disciplinary actions for its failure to comply are initiated and concluded. Only at that point will there be a decision of the Oversight Panel which affects the legal rights, duties, or privileges of the parties and terminates the proceedings before the administrative agency. Only at that point will there be a record sufficient for the circuit court to review. Only at that point will administrative review of the Oversight Panel's final decision be appropriate and available. See Pinkerton Security & Investigation Services v. Department of Human Rights, 309 Ill.App.3d 48, 243 Ill.Dec. 79, 722 N.E.2d 1148 (1999). Accordingly, we conclude that the trial court did not err as a matter of law in holding that this action was not one for administrative review and in holding a de novo evidentiary trial.
At the conclusion of the de novo evidentiary trial and after receiving written closing arguments, the trial court entered an order in favor of the School Board and against the Oversight Panel. The trial court found that the Oversight Panel had acted arbitrarily and capriciously in rejecting the contract with KAI in that it had relied on nonfinancial aspects of KAI's past performance on other projects in the school district and had failed to properly consider all the evidence before it. The trial court found that the Oversight Panel's rejection of KAI was not based on the evidence before it, but on personal bias of a majority of the panel members. The trial court found that Directive 03-1(a) was merely a subterfuge by which the panel could impose its preferred architect upon the School Board, which the law does not allow. Accordingly, the trial court declared that the Oversight Panel had acted in violation of and beyond the scope of its statutory authority in rejecting the proposed contract with KAI and that Directive 03-1(a) is invalid, and the court enjoined the Oversight Panel from enforcing Directive 03-1(a) or otherwise initiating disciplinary procedures against the School Board or its members.
The Oversight Panel's next argument on appeal is that the trial court erred as a *700 matter of law in ruling that the panel did not have the statutory authority to reject KAI as a party to the proposed contract because, according to the trial court, that contract was within the dollar limit set by the school district's budget and financial plan. The Oversight Panel asserts that the trial court held that the panel was required to approve the contract with KAI because it was within the budget and financial plan for the school district. The Oversight Panel grossly misreads the trial court's order. The trial court made no such ruling.
In East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel, 178 Ill.2d 399, 410, 227 Ill.Dec. 568, 687 N.E.2d 1050 (1997) (Local 1220), the Illinois Supreme Court held that the statute creating and empowering the Oversight Panel (105 ILCS 5/1B-1 et seq. (West 1994)) does not limit the panel's authority to review contracts to the strictly financial aspects of a contract, that is, the dollar amount, but grants the panel broader powers of contract oversight. In that case, the Oversight Panel rejected the proposed renewal of a contract with the superintendent of schools, even though the contract fell within the dollar limit for the salary set by the school district's budget and financial plan. The panel expressed concerns that the superintendent did not have sufficient financial expertise to keep the district's budget balanced. The School Board voted to renew the contract despite the Oversight Panel's rejection, and the Oversight Panel voted to remove the members of the School Board from office. On appeal, the supreme court held that the Oversight Panel was within its rights in rejecting the proposed contract for reasons other than the dollar amount of the proposed salary. The court stated:
"Nor is it contrary to the purpose of the statute for the Panel to require certain financial expertise of the superintendent to insure the financial well-being of the school district. It is certainly as important to the fiscal health of a school district in financial trouble to have a superintendent who can manage a budget as it is to have a superintendent whose salary is within that budget. The Panel was thus within its authority in refusing to renew a contract that did not require sufficient financial expertise of the superintendent." Local 1220, 178 Ill.2d at 410, 227 Ill.Dec. 568, 687 N.E.2d 1050.
The Oversight Panel argues that the trial court in the case at bar ruled contrary to the holding of Local 1220 when the trial court ruled that the panel had no authority to reject the KAI contract because its dollar amount was within the limit set by the school district's budget and financial plan. The trial court did not so rule. Indeed, the trial court recognized the holding of Local 1220 that the Oversight Panel may look beyond the mere dollar amount of the proposed contract in considering whether to approve it. The trial court merely pointed out that the dollar amount of the proposed contract did, in fact, fall within the budget and financial plan set for the school district. Accordingly, the Oversight Panel could not, and did not, reject the contract on that basis. The trial court then went on to discuss the reasons used by the Oversight Panel to reject the contract and found them to be arbitrary and capricious because they were not reasons the legislature intended the panel to consider (nonfinancial aspects of the contract), they were not based on the evidence before it, and they were a pretext to cover up personal bias on the part of panel members. The trial court did not misconstrue the School District Financial Oversight Panel and Emergency Financial Assistance Law (105 ILCS 5/1B-1 et seq. (West *701 2002)), and the court complied with the law as set forth in that statute and Local 1220.
The Oversight Panel next argues that the trial court erred in finding that the panel acted arbitrarily and capriciously in rejecting KAI as a party to the proposed contract with the School Board. The parties dispute the appropriate standard of review. The Oversight Panel, clinging to its argument that this is an administrative review proceeding, argues that our review should be de novo, and the School Board argues that we should review the trial court's decision for an abuse of discretion.
Because we have found that this action is one for declaratory relief, we will apply the abuse-of-discretion standard. While the grant or denial of declaratory relief is discretionary, the trial court's exercise of discretion is not given the same deference as it is in other contexts. Instead, it is subject to an independent, searching review. Schneiderman v. Kahalnik, 200 Ill.App.3d 629, 633, 146 Ill.Dec. 371, 558 N.E.2d 334 (1990). Its findings of fact will not be disturbed unless they are against the manifest weight of the evidence. Schneiderman, 200 Ill.App.3d at 633, 146 Ill.Dec. 371, 558 N.E.2d 334; State Farm Mutual Automobile Insurance Co. v. Dreher, 190 Ill.App.3d 182, 184-85, 138 Ill.Dec. 131, 547 N.E.2d 1 (1989).
The trial court found that the Oversight Panel had acted arbitrarily and capriciously and that its actions were invalid and unenforceable. After having carefully reviewed the record on appeal, we find the trial court's findings of fact to be contrary to the manifest weight of the evidence and its decision to be an abuse of discretion. Although the Oversight Panel's actions in rejecting and expressing its reasons for rejecting KAI may not have been as methodical and well documented as they could have been, we cannot conclude that the panel's actions were arbitrary and capricious. The record reflects that the Oversight Panel had serious concerns about KAI's competence and ability to efficiently complete the school construction projects without problems that would result in additional costs to the school district. These concerns were based in part on what the panel knew about KAI's past performance on school district projects, which included a high volume of change orders due to errors or omissions on the part of KAI. Ultimately, the Oversight Panel's decision was based on its judgment that entering into a contract with KAI would in all likelihood end up costing the school district more money than would entering into a contract with a different architectural firm.
Agency action is arbitrary and capricious if the agency (1) relies on factors that the legislature did not intend for the agency to consider, (2) entirely fails to consider an important aspect of the problem, or (3) offers an explanation for its decision which runs counter to the evidence before the agency or which is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Greer v. Illinois Housing Development Authority, 122 Ill.2d 462, 505-06, 120 Ill.Dec. 531, 524 N.E.2d 561 (1988). The standard is one of rationality. Greer, 122 Ill.2d at 506, 120 Ill.Dec. 531, 524 N.E.2d 561. The scope of review is narrow and the court is not, absent a clear error of judgment, to substitute its own reasoning for that of the agency. Greer, 122 Ill.2d at 506, 120 Ill.Dec. 531, 524 N.E.2d 561.
The trial court found that the Oversight Panel's decision was arbitrary and capricious because (1) the panel relied on factors which the legislature did not intend for the panel to consider, such as the nonfinancial aspects of the past performance *702 of KAI in the district, as well as facts regarding KAI's prequalification status because KAI was in fact prequalified at the time of the panel's ultimate decision in January 2003, (2) the panel entirely failed to consider an important aspect of the problem, being the reasonableness of the volume of change orders on the Lansdowne project that had been due to errors and omissions on the part of KAI, and failed to consider that the project came in well under budget, and (3) the panel's explanations for not approving KAI were contrary to the evidence before the panel and were based on "some personal bias" of the majority of the panel members against KAI and in favor of Ittner.
Our review of the record on appeal reveals that the trial court's findings of fact are contrary to the manifest weight of the evidence presented to it, and its decision was an abuse of discretion, for the following reasons: (1) the panel did not rely on factors which the legislature did not intend for it to rely on, because the panel's decision was based on its findings that entering into a contract with KAI would have an adverse financial impact on the school district, (2) the panel did not fail to consider important aspects of the problem, because evidence of the reasonableness of the volume of change orders on the Lansdowne project due to KAI's errors and omissions was not known to the panel at the time its decision was made, and it did consider that the Lansdowne project came in under budget, and (3) there is absolutely no evidence in the record on appeal of any "personal bias" on the part of any panel member either against KAI or in favor of Ittner.
Beginning in the spring and early summer of 2002, the Oversight Panel became aware of some problems KAI was having on other school district construction projects. KAI was already working on several construction projects for the school district under preexisting contracts. In May 2002, the School Board expressed interest in awarding KAI a contract to build two new schools for the district. At the same time, the Oversight Panel became aware that KAI had lost its prequalification status with the CDB, a requirement for any architectural firm wanting to contract with the School Board. KAI had let its prequalification status lapse by failing to file a form with the CDB. Richard Mark, chairman of the Oversight Panel, testified that it concerned him that a firm as large as KAI would allow its prequalification to lapse. Nevertheless, in June 2002, the Oversight Panel approved a contract with KAI to renovate some classroom space in an existing school building for an amount not to exceed $50,000. According to Richard Mark, this was a relatively small project, and the Oversight Panel set aside its concerns about KAI in light of the size of the project.
In July 2002, the Oversight Panel became aware of a high number of change orders on the Lansdowne school, another project on which KAI was working. These change orders were attributed to errors and omissions on the part of KAI and had cost the school district an additional $1 million.
On July 31, 2002, on the advice of the financial administrator, the Oversight Panel rejected KAI as a party to a contract to build the two new schools. The stated reason was because KAI had lost its CDB prequalification due to low performance scores. The panel was also aware of the costly change orders on the Lansdowne project. Richard Mark, the panel chairperson, felt that if KAI could not even meet the minimum prequalification standard, there was no point in considering it for the projects; prequalification was a threshold issue. Mark saw no inconsistency in the panel's approval of KAI for the *703 classroom renovation contract because that was a different type of project that did not require CDB prequalification.
KAI was again proposed as a party to a contract to build the two new schools in October 2002. The financial administrator again recommended rejection of KAI because, although it had received CDB prequalification, that prequalification was only probationary. By this point in time, the Oversight Panel had engaged in many discussions about problems with other projects on which KAI was working for the school district: a local contractor had complained that KAI had not paid him, there were delays with KAI projects, there were errors and omissions on KAI's design with respect to the Dunbar school, and the CDB had publicly accused KAI of being at fault for delays and change orders on the Lansdowne school and had stated that the CDB would never hire KAI again. Problems with KAI kept cropping up. Accordingly, the Oversight Panel again voted to reject KAI as a party to a contract at its October 2002 meeting. The stated reason for the rejection was that KAI's CDB prequalification was only probationary. The CDB had granted KAI only temporary or conditional prequalification until the end of the year on the condition that KAI complete and finalize two other projects it was working on with the CDB. Richard Mark admitted some confusion regarding exactly what KAI's status with the CDB was, but the panel knew that KAI did not have full prequalification and that the CDB had some problems with KAI. In any event, the Oversight Panel could not understand why the School Board was so insistent on a contract with KAI when there were so many problems with KAI.
Richard Mark testified that by October 2002, he probably would not have approved a contract with KAI even if it had full CDB prequalification status. He explained that the school district used two architects, KAI and Ittner. With Ittner there were rarely any problems. With KAI, there were constantly problems, every month. Mark did not believe it made any sense to enter into a new contract with a firm with which there were already so many problems.
Following the October 2002 panel meeting, the Oversight Panel issued its Directive 03-1 directing the School Board to conduct a search for qualified architects to work on the two new schools. Five architectural firms were interviewed by a committee that included representatives from the Oversight Panel, the State Board of Education, and the local School Board. KAI was one of these firms. The committee ranked KAI second out of five, and it ranked Ittner first. Nevertheless, at its next meeting, the School Board voted to rank KAI first and Ittner second.
At its December 2002, meeting, the panel learned that the School Board had rejected the ranking of the committee and had ranked KAI first and Ittner second. The panel agreed to send the School Board a letter inquiring why it had ranked the architects differently from the committee. Again, Richard Mark expressed that it made no sense to the panel why the School Board was so insistent on an architectural firm with which there were so many problems, when the district had another architect with whom there were few problems.
The School Board responded to the panel's letter of inquiry in January 2003. The School Board explained that it was pleased with KAI's experience and past performance with the school district and that it intended to use KAI's design of the Dunbar school as a prototypical plan for the two remaining schools. Accordingly, the School Board felt that KAI was most qualified to design those two remaining schools. The School Board also expressed *704 concern with Ittner because it already had a heavy workload with five other construction projects in the district. The School Board expressed, however, that it was pleased with Ittner's experience and past performance in the district.
Richard Mark testified that by December 2002 neither he nor the other panel members wanted to contract with KAI. The school district had two architects. With one there were few, if any, problems. With KAI there were constant problems. Those problems were costly to the district.
At its January 2003 meeting the Oversight Panel again rejected a proposed contract with KAI for the stated reason that there had been no satisfactory resolution of earlier panel concerns. For the first time, the minutes of the panel meeting reflect and identify what those concerns were. The minutes of every other meeting at which this issue had come up simply reflected that KAI was being rejected on the basis of its lack of prequalification status.
Richard Mark admitted that at the times the panel voted to reject KAI, the Oversight Panel did not have every piece of relevant information regarding KAI and not all the panel's information was completely accurate. Nevertheless, Mark explained that all the panel could base its decisions on was the information that it had at the time of the meeting at which its members voted.
Ann Duncan, a member of the Oversight Panel, testified consistently with Richard Mark. She emphasized that the stated reason for the rejection of KAI, such as the lack of CDB prequalification, was not the only reason the panel rejected KAI. The panel had other concerns about KAI, but they were not always included in the minutes of the panel meetings as reasons for the rejection. Duncan admitted that she based her rejection of KAI on the recommendations of the financial administrator and on statements by Susan Weitekamp, an employee of the State Board of Education who provides assistance to the Oversight Panel. However, Duncan respected these people and felt it was reasonable to rely on their recommendations and statements. Saundra Hudson, the third member of the Oversight Panel, testified consistently with Richard Mark and Ann Duncan.
James F. Tapscott is the financial administrator for the Oversight Panel. In April or May 2002, he first learned that KAI had lost its prequalification with the CDB. Beginning in the spring of 2002, Tapscott also began hearing from Richard Wells, who oversees construction projects for the school district, of change orders and errors and omissions by KAI on the Lansdowne school project. Despite this negative information, KAI was approved for the renovation project on the Jackson school because Richard Wells had indicated that he believed it was a small enough project that KAI could handle it. Tapscott recommended against approving KAI for the new construction projects at the panel's July 2002 meeting, because KAI was not CDB prequalified and because he was getting bad reports on its performance on other district construction projects. Because prequalification was an initial hurdle and because the panel did not want to harm KAI's reputation, the stated reason for the rejection in July 2002 was the lack of CDB prequalification. Tapscott would not have recommended approving KAI for a contract in July 2002 even had it been prequalified. Tapscott based his recommendations solely on reports he had received from Richard Wells and Susan Weitekamp. He did not conduct any investigation of his own and did not request any documentation from Wells or Weitekamp to support their statements. *705 Tapscott felt comfortable relying on reports from these individuals because he was hearing the same reports from everyone, including the CDB.
In October 2002, Tapscott again recommended against approving KAI for the two new construction projects for the stated reason that KAI's prequalification was only probationary. The unstated reason for recommending a rejection was the poor performance of KAI on other district construction projects. Tapscott recommended against an approval again in January 2003, because the earlier concerns about KAI had not been resolved. In January 2003, when Tapscott recommended against approving KAI for a construction contract, he believed that KAI's design errors were responsible for at least one-half of the more than $1 million in change orders on the Lansdowne school. Only after the Oversight Panel had voted to reject KAI did Tapscott learn that KAI was only responsible for $300,000 in change orders on the Lansdowne project, purportedly a reasonable amount. Ittner was working on several construction projects for the school district during this time period. The Ittner projects were all on time and under budget, with minimal change orders. There were no problems or concerns with any of the Ittner projects. The KAI projects were not completed on time, were over budget, or had excessive change orders.
Susan Weitekamp testified that she is employed by the State Board of Education and that one of her job duties is to assist the Oversight Panel with respect to the school construction project program. She provides the same services to every other school district in Illinois. She has a college degree in architectural technology. Weitekamp based her reports to the Oversight Panel on information she had obtained from Richard Wells and the CDB. She confirmed that she had given to the Oversight Panel the information regarding various problems with KAI on existing construction projects and problems KAI had with the CDB, on which the panel relied in rejecting the proposed contract with KAI.
Richard Wells testified that his education is in economics and banking and that he is employed by the school district as executive director of business and operations. He has no training in architecture or construction. Wells was hired by the School Board with the approval of the Oversight Panel. He believed he could be fired from his job by either party. One of his job duties was to act as a liaison between architects and engineers and the school district on district construction projects. He provided information to both parties regarding the status of the various district construction projects. Wells believed that KAI was qualified to work on any size construction project in the district. Wells confirmed that Susan Weitekamp did get her information from him, but he stated that Weitekamp did not always properly understand that information.
We now address the trial court's findings. The trial court found that the panel had relied on factors which the legislature did not intend for it to rely on, such as the nonfinancial aspects of the past performance of KAI in the district and its prequalification status. As the Illinois Supreme Court held in Local 1220, 178 Ill.2d at 410, 227 Ill.Dec. 568, 687 N.E.2d 1050, in deciding whether to approve a contract, the Oversight Panel has broad powers of contract oversight and can look beyond the mere dollar amount of a contract to determine whether it will have a negative impact on the school district's "fiscal health." In Local 1220, the Oversight Panel looked beyond the dollar amount of a proposed contract with the *706 district superintendent, that is, her salary, and examined her ability to perform the job. The Oversight Panel looked at the superintendent's past performance in the district and concluded that she lacked sufficient financial expertise to keep the budget balanced. The Illinois Supreme Court found that the Oversight Panel had been within its rights in rejecting a contract that did not require sufficient financial expertise of the superintendent, stating, "It is certainly as important to the fiscal health of a school district in financial trouble to have a superintendent who can manage a budget as it is to have a superintendent whose salary is within that budget." Local 1220, 178 Ill.2d at 410, 227 Ill.Dec. 568, 687 N.E.2d 1050.
Similarly, the Oversight Panel in the case at bar was within its rights in examining the competence and level of expertise of KAI in deciding whether to approve or reject a contract involving KAI. These were not factors that the legislature did not intend for the panel to consider. Ultimately, the Oversight Panel concluded that entering into a contract with KAI would be too costly and would not contribute to the "fiscal health" of the school district.
The trial court also found that the panel had failed to consider important aspects of the problem: that KAI was not responsible for the bulk of the change orders on the Lansdowne project, but its responsibility for those change orders was within reasonable limits, and that the Lansdowne project came in under budget. While it may not have been clear to the trial court, it is clear to this court after reviewing the record on appeal that the panel had no knowledge that KAI was not responsible for the bulk of those change orders at the time it made its decision in January 2003 to reject KAI. The record is clear that at that time, the panel had been informed, and believed, that most of the $1.2 million in change orders were due to the errors and omissions of KAI. The panel also knew that the Lansdowne project had come in under budget, but this information was not enough to offset all the negative information the panel had about KAI's past performance in the district.
Finally, the trial court found that the panel's decision was not based on the evidence before it but was based on the personal bias of the panel members against KAI and in favor of Ittner. There is absolutely no evidence in the record to support this finding. Even Dr. Nathaniel Anderson, the superintendent of schools for the school district, testified that the reason Richard Mark, chairman of the Oversight Panel, rejected KAI was all the problems the district had with KAI, not because of some unstated, illegitimate reason. Dr. Anderson did testify, however, that the dispute between the School Board and the Oversight Panel regarding KAI was really about power. Dr. Anderson also confirmed that there were many fewer problems with Ittner than with KAI and that the school district's relationship with Ittner was better than its relationship with KAI.
The Oversight Panel's decision rejecting a proposed contract between the School Board and KAI was not arbitrary and capricious but was a reasoned decision based on information the panel had regarding repeated and continuing problems the district had with KAI in the past and the possibility of those problems arising in the future to the financial detriment of the school district. The trial court's decision to the contrary is not only against the manifest weight of the evidence but is an abuse of the trial court's discretion. Accordingly, we reverse the trial court's judgment declaring that the Oversight Panel acted arbitrarily and capriciously in rejecting the proposed contract with KAI.
*707 Because the trial court based its decision that Directive 03-1(a) was invalid on its finding that the panel's rejection of the proposed contract with KAI was arbitrary and capricious, and because we have reversed that finding, we also reverse the trial court's declaration that Directive 03-1(a) is invalid, and we reverse the injunction against its enforcement. We reject the trial court's finding that Directive 03-1(a) "was merely a subterfuge by the Panel to assert its `preferred architect' upon the Board, and in essence an attempt to force them to negotiate with the Panel's choice[,] being Wm. B. Ittner, Inc.," as being contrary to the manifest weight of the evidence. As we have stated, the record contains no evidence of any personal bias on the part of panel members in favor of Ittner. Further, we note that Directive 03-1(a) did not direct the School Board to negotiate a new contract with any particular architect but instead directed it to negotiate a contract with an architect other than KAI.
Accordingly, we reverse in its entirety the trial court's order of April 10, 2003.
The final issue presented for our review relates to certain postjudgment proceedings. After the filing of the notice of appeal from the declaratory judgment and the injunction, the School District filed a petition for a rule to show cause pursuant to section 2-701(c) of the Code of Civil Procedure (735 ILCS 5/2-701(c) (West 2002)). That section pertains to declaratory judgment actions and provides that if further relief based upon a declaration of rights becomes necessary or proper after the declaration has been made, an application may be made by petition to any court having jurisdiction for an order directed to any party to show cause why the further relief should not be granted forthwith. 735 ILCS 5/2-701(c) (West 2002). The School Board's petition for a rule to show cause sought a court order mandating that the Oversight Panel approve the proposed contract with KAI for architectural and engineering services for the subject projects immediately. The Oversight Panel filed a response in which it asserted that the circuit court had lost jurisdiction over the cause by virtue of the filing of its notice of appeal from the order of April 10, 2003, that the School Board had waived its right to further relief by failing to seek it in the complaint for a declaratory judgment, and that the School Board had failed to present the Oversight Panel with a proposed contract for its review and approval.
Oral arguments were heard on the petition for a rule to show cause and the response thereto on May 6, 2003. Thereafter, on May 8, 2003, the circuit court entered an order finding that it had jurisdiction over the petition, granting the petition, and directing and mandating the Oversight Panel to approve and execute the proposed contract between the School Board and KAI for architectural and engineering services for the remaining school construction projects.
The Oversight Panel appeals from this order, challenging both the trial court's finding of jurisdiction and the propriety of the injunction ordering that it approve the contract. In light of our reversal of the trial court's order of April 10, 2003, which had found that the panel had acted arbitrarily and capriciously in rejecting the proposed contract, we reverse this further order of the trial court, which was based thereon.
For the foregoing reasons, the orders of the circuit court of St. Clair County entered April 10, 2003, and May 8, 2003, are hereby reversed.
Reversed.
*708 HOPKINS, J., concurs.
Presiding Justice CHAPMAN, dissents.
NOTES
[1] Counts I and II of the amended complaint are still pending before the trial court and are not pertinent to this appeal.
[2] The complaint was subsequently amended to name as additional plaintiffs the individual members of the School Board. Our references to the School Board include these plaintiffs.