FOURTH DIVISION

September 1, 2005

No. 1-04-1246

GEORGE BROWN, Individually, and as Parent ) Appeal from the Circuit

and Next Friend of Brittany Brown, CHARLES ) Court of Cook County

LEE, TITUS LEE, HARRIET GREENFIELD, )

Individually, and as Parent and Next Friend of Kyla )

Greenfield, JACQUELYN SCOTT, STACI WALKER, )

and BESSIE SCOTT, )

) 

Plaintiffs-Appellants, ) No. 02 CH 8296

)

v. ) 

)

ARNE DUNCAN, Chief Executive Officer; THE BOARD ) 

OF EDUCATION OF THE CITY OF CHICAGO; ) 

THE OFFICE OF SCHOOL AND COMMUNITY ) 

RELATIONS; and MARILYN JOHNSON, General )

Counsel, )          Honorable

)          Julia M. Nowicki,

Defendants-Appellees. )          Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs, George Brown, Charles Lee, Titus Lee, Harriet Greenfield, Jacquelyn Scott, Staci Walker and Bessie Scott, former members of the Local School Council of Marquette Elementary School (the LSC), appeal from an order of the circuit court of Cook County dismissing with prejudice their third amended complaint for administrative review, writ of 
certiorari
 and declaratory judgment against defendants, the Board of Education of the City of Chicago (the Board), the Office of School and Community Relations, Arne Duncan, chief executive officer of the Board and Marilyn Johnson, general counsel to the Board.  In the complaint, plaintiffs alleged that the Board's refusal to approve a principalship contract the LSC had entered with Georgette Watson was in violation of the Illinois School Code (the Code) (105 ILCS 5/1-1 
et seq. 
(West 2002)).  

On appeal, plaintiffs contend that because this case raises an issue of public interest that is capable of repetition yet avoiding review, the trial court erred in dismissing their complaint as moot.  In response, defendants first allege that the trial court lacked jurisdiction to consider the Board's refusal to approve Watson's contract under a petition for writ of 
certiorari
.  Accordingly, defendants argue that we, too, lack jurisdiction and should, therefore, dismiss plaintiffs' appeal.  Defendants further allege that the cause is not excepted from the mootness doctrine.

In 2002, a vacancy arose in the principalship at Marquette Elementary School.  The LSC selected Georgette Watson to fill the vacancy by a seven-vote majority on March 7, 2002, and signed a contract with Watson on March 8, 2002.
(footnote: 1) 

Thereafter, the Board's general counsel issued an opinion letter to the LSC informing it that the March 7, 2002, selection of Watson as principal was invalid because at least two of the seven members who voted in Watson's favor were not lawful members of the LSC.  The letter explained that an investigation revealed that Titus Lee, a community representative on the LSC, was not a lawful member because he had never lived in the Marquette attendance area.
(footnote: 2)  The investigation further revealed that Staci Walker, a parent representative, was not a lawful member because, prior to February 5, 2002, though she had been serving on the LSC, she had not been the parent or legal guardian of any child enrolled in Marquette.
(footnote: 3)  The letter explained that the investigation had revealed that on February 5, 2002, Walker was appointed legal guardian of three Marquette students.  On February 21, 2002, the LSC had voted to reinstate Walker as a parent representative.  According to the Board, the vote to "reinstate" Walker, who had never been a lawful member, rather than to "appoint" her, was ineffective and that, therefore, even after she became the legal guardian of three Marquette students, Walker was not a lawful member of the LSC.  The letter further called into doubt the legality of the appointment of Bessie Scott, a parent representative, because she had been appointed on March 7, 2002, pursuant to a motion by Walker, who, in the Board's opinion, was not a lawful member.  The Board concluded that, because Lee, Walker and possibly Scott were not lawful members of the LSC, their votes in favor of offering Watson the principalship were null and void.  Accordingly, there were insufficient votes to select Watson as principal.  The Board further opined that the membership of teacher representative Eileen Scanlan, who had not voted in favor of offering Watson the principalship, was not lawful because an advisory poll of the school staff had not been conducted prior to her appointment.
(footnote: 4)  Finally, the Board objected to the method by which the vote was taken, opining that "it is unclear whether, in voting 'yes,' an LSC member was in favor of the candidate's elimination or the candidate's selection as the next contract principal."  

The Board recommended a script to be employed in selecting a new principal and further advised the LSC to take the following steps:

"(1) if the LSC still wishes that Ms. Walker be on the LSC, appoint Ms. Walker pursuant to a proper motion and vote; (2) ratify Ms. Bessie Scott's earlier appointment to the LSC; [and] (3) if the LSC still wishes to select Ms. Watson as the new contract principal, it must do so with the affirmative vote of seven (7) validly seated members by the parliamentary method." 

The Board indicated that associate general counsel Miguel A. Rodriguez had been assigned to work directly with the LSC and directed the LSC to contact Rodriguez with questions and comments. 

There is no indication on the record that the LSC attempted to comply with the Board's letter or that it contacted Rodriguez.  Instead, plaintiffs filed a complaint against defendants in the circuit court of Cook County on April 25, 2002, seeking administrative review of the Board's decision not to approve Watson's contract. 

The parties agree that, thereafter, on May 1, 2002, the LSC held elections and that none of the plaintiffs was reelected.  The new LSC offered a four-year principal contract to a different candidate.  On August 26, 2002, plaintiffs filed an emergency motion to enjoin the Board from ratifying the new contract.  The trial court denied the motion.  

On several occasions, the trial court granted plaintiffs leave to amend their complaint.  In their third amended complaint, the subject of this appeal, filed November 19, 2003, plaintiffs alleged that the trial court had jurisdiction pursuant to Illinois Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 2002)), pursuant to section 2-701 of the Code of Civil Procedure (735 ILCS 5/2-701 (West 2002)), which governs requests for declaratory judgment, and pursuant to common law of the State of Illinois.  The third amended complaint alleged four counts.  Count I was entitled "Administrative Review of Letter Decision"; count II was entitled "Common Law 
Certiorari
"; count III was entitled "Declaratory Judgment"; and count IV was entitled "Injunctive Relief."  Each count essentially alleged that after the LSC formed a contract with Watson, the Board executed a written decision, referred to by plaintiffs as the "letter decision," in which it refused to ratify the contract, nullified the actions of Titus, invalidated the appointments of Walker and Scott and invalidated the actions of the LSC because it could not satisfy its quorum requirement.  Plaintiffs alleged that in finding several LSC members ineligible to serve on the LSC without a hearing and in retroactively invalidating those allegedly ineligible members' votes, the Board had violated Board Rule 6-28.
(footnote: 5)   Plaintiffs asked the trial court to stay and reverse the "letter decision," to declare that the decision violated Board Rule 6-28 and that it was arbitrary, capricious and unreasonable and to order the enforcement of the LSC's contract with Watson.  

Defendants filed a motion to strike and dismiss plaintiffs' third amended complaint on January 27, 2004, inexplicably alleging that "[t]he only remaining count before this court [was] Count II [common law 
certiorari
]" and asking that the court dismiss the complaint because it sought relief that the trial court did not have the authority to grant when adjudicating a petition for writ of 
certiorari
.  Specifically, defendants alleged that under a petition for writ of 
certiorari
, the trial court is limited to determining whether a decision of an administrative agency is against the manifest weight of the evidence and that the trial court could not, as plaintiffs requested, stay and reverse a decision of the administrative agency or make declarations of the rights of the parties.  Defendants further alleged that a petition for writ of 
certiorari
 was an inappropriate cause of action because the Board had not made a final decision in this case.  

Plaintiffs responded, on March 2, 2004, that a petition for writ of 
certiorari
 was an appropriate cause of action and that, nonetheless, the entire complaint should not be dismissed for the insufficiency of only one count.  

On March 10, 2004, defendants replied that "[t]his case has become very simple" because on March 9, 2004, Watson had entered into a four-year contract to serve as principal of Brentano School, another Chicago school.  Defendants concluded that "there are no issues left for this court to resolve and this case should be dismissed with prejudice."  The Board approved Watson's contract on March 24, 2004. 

On March 30, 2004, the trial court granted defendants' motion to dismiss the case with prejudice and further granted defendants leave to amend their reply to add the Board's report approving Watson's contract with Brentano School.  The court found no just reason to delay enforcement of its order.  Defendants subsequently added their report approving Watson's contract.  Plaintiffs appealed on April 27, 2004. 

We will first address defendants' contention that we must dismiss this case for lack of jurisdiction.  Defendants allege that the trial court did not have jurisdiction to consider plaintiffs' third amended complaint because "the letter was not a final administrative decision, nor a quasi-judicial proceeding reviewable by the circuit court on a complaint for common law writ of 
certiorari
."  Defendants argue that, because the trial court lacked jurisdiction, we, too, do not have jurisdiction to consider this case and are therefore obligated to dismiss plaintiffs' appeal. 

An examination of plaintiffs' third amended complaint reveals that plaintiffs did not merely petition for writ of 
certiorari
.  On the contrary, in the alternative, plaintiffs requested administrative review of the Board's refusal to approve Watson's contract pursuant to the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 2002)) and for a declaration that the Board's decision was in violation of the Code.  We will address, therefore, whether the trial court had jurisdiction to consider the complaint pursuant to either the Administrative Review Law, a common law writ of 
certiorari
 or an action for declaratory judgment. 

Defendants contend and plaintiffs do not disagree that the Administrative Review Law does not apply to decisions made by the Board because the statute creating and empowering the Board (105 ILCS 5/34-1 
et seq.
 (West 2002)) does not so provide.  "The Administrative Review Law applies only where it is expressly adopted by reference in the act creating or conferring power upon the administrative agency involved."  
Walters v. Department of Labor
, 356 Ill. App. 3d 785, 789 (2005).  Accordingly, plaintiffs were not entitled to relief under the Administrative Review Law. 

However, "[w]here the Administrative Review Law [citation] has not been expressly adopted, the writ of common law 
certiorari
 survives as an available method of reviewing the actions of agencies and tribunals exercising administrative functions."  
Stratton v. Wenona Community Unit District No. 1
, 133 Ill. 2d 413, 427 (1990).  

"The common law writ of 
certiorari
 was developed to provide a means whereby a petitioner who was without avenue of appeal or direct review could obtain limited review over an action by a court or other tribunal exercising quasi-judicial functions. *** The purpose of the writ is to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, that the inferior tribunal proceeded according to the applicable law."  
American Federation of State, County & Municipal Employees, Council 31, AFL-CIO v. Department of Central Management Services
, 288 Ill. App. 3d 701, 710 (1997).    

Quasi-judicial hearings are those which concern agency decisions affecting a small number of people on individual grounds based on a particular set of disputed facts that have been adjudicated.  
East St. Louis School District No. 189 Board of Education v. East St. Louis District No. 189 Financial Oversight Panel
, 349 Ill. App. 3d 445, 449 (2004).  Accordingly, judicial review of a quasi-judicial hearing generally can only occur where there has been a final agency determination, "which usually follows some sort of adversarial proceeding involving the parties, a hearing on the controverted facts, and an ultimate disposition rendered by an impartial fact finder."  
East St. Louis
, 349 Ill. App. 3d at 449.  However, administrative agencies may also exercise quasi-legislative functions which are not subject to review pursuant to a writ of 
certiorari
.  
American Federation
, 288 Ill. App. 3d at 712.  Instead, "[q]uasi-legislative actions of an administrative agency can be reviewed in a declaratory judgment action if it is alleged that the action is unlawful."  
East St. Louis
, 349 Ill. App. 3d at 450
.  

In 
East St. Louis
, after the school board negotiated a contract with the architectural firm Kennedy and Associates, Inc., for construction of two new school buildings, the oversight panel rejected the contract and directed the school board to negotiate an appropriate contract with a firm other than Kennedy and Associates, Inc.  The school board filed a complaint in the trial court, count III of which sought a declaratory judgment that the oversight panel had violated its authority in rejecting the contract and that its directive was invalid and an injunction against the oversight panel.  The trial court held a 
de novo
 evidentiary trial on the matter and determined that the oversight panel had acted arbitrarily and capriciously in rejecting the contract. 

On appeal, the oversight panel renewed its argument made in the trial court that, as an administrative agency, its decisions were subject only to administrative review.  Accordingly, it argued, review of its decision could only be had pursuant to a writ of 
certiorari
 based on the record of the administrative proceedings and not on a 
de novo
 evidentiary trial before the court.  The appellate court held that the nature of the administrative agency's action or decision controls whether judicial review is available.  While judicial review is appropriate in cases where the administrative agency has exercised quasi-judicial functions, quasi-legislative functions could be reviewed in a declaratory judgment action.  Finding that the oversight panel's rejection of the contract was more akin to a quasi-legislative action than a quasi-judicial action, the court noted that, at the administrative level, "[t]here was no adjudicatory hearing held to determine the individual rights or disputed facts.  Indeed, there was no hearing at all on the disputed facts raised in the school board's complaint for declaratory relief and injunction.  Accordingly, there is an insufficient record on which a reviewing court could base a determination regarding the propriety of the oversight panel's action."  
East St. Louis
, 349 Ill. App. 3d at 450.  The appellate court further found that the oversight panel's directive did not terminate the proceedings before the administrative agency.  The court explained: 

"The proceedings before the administrative agency will only terminate when the School Board complies with [the directive] or when disciplinary actions for its failure to comply are initiated and concluded.  Only at that point will there be a decision of the Oversight Panel which affects the legal rights, duties, or privileges of the parties and terminates the proceedings before the administrative agency.  Only at that point will there be a record sufficient for the circuit court to review.  Only at that point will administrative review of the Oversight Panel's final decision be appropriate and available."  
East St. Louis
, 349 Ill. App. 3d at 451. 

The appellate court concluded that the trial court did not err in holding that an administrative review action was not appropriate, in holding that, instead, an action for declaratory judgment was appropriate and in conducting a 
de novo
 evidentiary trial. 

Here, as in 
East St. Louis
, the Board did not conduct an adjudicatory hearing, or any hearing at all.  Additionally, the Board did not, in this case, render an ultimate determination of the issue.  On the contrary, in its letter, the Board refused to approve Watson's contract at that time but did not preclude approval of her contract in the future. In fact, the Board offered advice as to how the LSC should go about remedying problems with the process by which it approved Watson's principalship and further assigned an assistant general counsel to aid the LSC in complying with the mandate of the letter.  We find, therefore, that in this case, as in 
East St. Louis
, the action of the Board in refusing to ratify Watson's contract was more akin to a quasi-legislative action than it was to a quasi-judicial action.  Accordingly, we find that, though 
certiorari
 was an inappropriate vehicle for the type of relief sought by plaintiffs, plaintiffs properly brought suit for a declaratory judgment that the decision violated the Board rules and the Code. 

Our finding is also supported by 
Chicago School Reform Board of Trustees v. Martin
, 309 Ill. App. 3d 924 (1999), which also proceeded as a declaratory judgment action.  In 
Martin
, a local school council twice voted to appoint Beverly Martin as its new principal and entered into two contracts with her.  The school board refused to ratify either contract and filed a complaint for declaratory judgment that neither contract with Martin was valid because the issuance of both was in violation of the Code.  In this case, as in 
Martin
, after the Board refused to ratify the contract the LSC had entered with Watson, plaintiffs properly sought declaratory judgment that the Board's refusal was in violation of the Board rules and the Code.   

Finally, we note that, contrary to the Board's assertion, even if we had found that the trial court did not have jurisdiction to consider this case, 
this
 court would not be deprived of jurisdiction to review the case.  On the contrary, when a party alleges, as here, that the trial court lacked jurisdiction to consider a cause of action, it is our duty to examine the case and determine whether the allegation is meritorious.  See 
Walters
, 356 Ill. App. 3d 785; 
Williams v. Tazewell County State's Attorney's Office
, 348 Ill. App. 3d 655 (2004).  If we find that the trial court did lack jurisdiction, we may be required to vacate the trial court's judgment with regard to the cause of action but are not required to dismiss the appeal for lack of jurisdiction before 
this 
court. 

We turn now to the issue of mootness.  We note, at the outset, that the parties agree and the record shows that since the Board issued its letter refusing to ratify Watson's contract, the LSC has held a new election in which none of the plaintiffs was reelected.  Furthermore, since the letter, Watson has been offered and has accepted a principalship with another Chicago school while the Marquette Elementary School principal vacancy has been filled.  Accordingly, the parties agree that the issue is moot.  See 
People 
ex rel.
 Hartigan v. Illinois Commerce Comm'n
, 131 Ill. App. 3d 376, 378 (1985) ("[a]n issue is moot where no actual rights or interests of the parties remain or where events occur which render it impossible for the reviewing court to grant effectual relief to either party").

However, plaintiffs contend that the trial court erred in dismissing their third amended complaint as moot because this case involves matters of public interest.  In their reply brief, plaintiffs additionally contend that the trial court erred in dismissing the complaint as moot because this case is capable of repetition yet evading review.  We find that this case falls into neither exception of the mootness doctrine and was, therefore, properly dismissed. 

 
The public interest exception to the mootness doctrine allows a court to resolve an otherwise moot issue that involves substantial public interest.  
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 395 (1994).  In order to fall into the public interest exception (1) the question must be of a public nature; (2) an authoritative determination of the question must be desirable for the purpose of guiding public officers; and (3) the question must be likely to recur.  
Bonaguro
, 158 Ill. 2d at 395.  To fall within the exception, there must be a clear showing of all three factors.  
Kohan v. Rimland School for Autistic Children
, 102 Ill. App. 3d 524, 527 (1981).  Accordingly, the exception has been construed very narrowly and is invoked only on rare occasions where the degree of public interest and concern is very clear and an extraordinary degree of public concern and interest is involved. 
 
DuPage County Election Comm'n v. State Board of Elections
, 345 Ill. App. 3d 200, 205 (2003); 
Edwardsville School Service Personnel Ass'n, IEA-NEA v. Illinois Educational Labor Relations Board
, 235 Ill. App. 3d 954, 959-60 (1992).  A court may also resolve a moot issue if the issue is capable of repetition, yet evading review.  
Mount Carmel High School v. Illinois High School Ass'n
, 279 Ill. App. 3d 122, 125 (1996).  "This exception is limited to situations where: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) where there is a reasonable expectation that the same complaining party would be subject to the same action again."  
Mount Carmel
, 279 Ill. App. 3d at 125.  "When it becomes apparent that an opinion cannot affect the results as to the parties or the controversy before it, the court should not resolve the question merely for the sake of setting a precedent or to govern potential future cases."  
Edwardsville School Service Personnel Ass'n, IEA-NEA
, 235 Ill. App. 3d at 958; 
People 
ex rel.
 Hartigan
, 131 Ill. App. 3d at 379.  

The question presented by plaintiffs' complaint, whether the Board's invalidation of the votes of several LSC members was a violation of the Board rules and the Code, concerns the balance of power between the Board and the LSC, potentially an issue of public interest.  Furthermore, an authoritative decision regarding the general question of how they are to interact may be helpful in guiding future school boards and local school counsels.  Nonetheless, we cannot except this case from the mootness doctrine.  In this case, plaintiffs have not been reelected and no longer serve on the Marquette Elementary School LSC.  Additionally, Watson, plaintiffs' preferred principal, has taken a position as a principal at another Chicago school, while another principal, voted for by the next LSC, has been serving as principal of Marquette Elementary School since 2002.  Accordingly, we can say neither that this issue is likely to recur nor that there is a reasonable possibility that plaintiffs would be subject to the complained-of action again.  Plaintiffs have also not shown that the specific type of controversy that took place in this case has arisen in the past or that it is likely to arise again in the future between other LSCs and the Board.  Furthermore, even if plaintiffs were to prevail on the merits of their complaint, the judgment would not have a practical effect in the instant controversy because, as stated above, plaintiffs no longer serve on the LSC, Watson has accepted a principal position with another school and another candidate has been seated as the principal of Marquette Elementary School.  Consequently, we find that resolution of these issues would be little more than an advisory opinion, and that the trial court properly dismissed the case as moot.

For the reasons stated above, we affirm the judgment of the trial court. 

Affirmed.

QUINN, P.J., and THEIS, J., concur. 

FOOTNOTES
1: Section 34-2.2 (c) of the Code provides that "7 affirmative votes of the local school council shall be required for the direct selection by the local school council of a new principal to serve under a 4 year performance contract."  105 ILCS 5/34-2.2 (c) (West 2002).

2: Section 34-2.1 (a) of the Code provides that "[e]ach local school council shall consist of *** 11 voting members: the principal of the attendance center, 2 teachers ***, 6 parents of students currently enrolled at the attendance center and 2 community residents."  105 ILCS 5/34-2.1(a) (West 2002).  Section 34-1.1 of the Code defines a community resident as "a person *** residing within an attendance area served by a school."  105 ILCS 5/34-1.1 (West 2002). 

3: Section 34-1.1 of the Code defines a parent as "a parent or legal guardian of an enrolled student of an attendance center."  105 ILCS 5/34-1.1 (West 2002). 

4:  Section 34-2.1 (1) of the Code provides that the Board shall appoint two teacher members to each local school council after conducting a "non-binding, advisory poll to ascertain the preferences of the school staff."  105 ILCS 5/34-2.1(l) (West 2002).

5: Section 34-2.1 (r) (1) of the Code (105 ILCS 5/34-2.1 (r) (1) (West 2002)) provides that if a council member becomes ineligible to serve, "he or she shall be removed by the Board subject to a hearing, convened pursuant to Board rule, prior to removal."  Board Rule 6-28, as embodied in a document entitled "The Link, A Quick Reference Guide for Local School Councils," provides the procedure for the removal of an ineligible LSC member.  The procedure begins with a written challenge to a member's eligibility, followed by an investigation by the Office of School and Community Relations during which the allegedly ineligible member may present personal statements and evidence substantiating his or her eligibility.  If the Office of School and Community Relations finds the member ineligible, it formally declares a vacancy on the LSC.