Docket No. 102619.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

JOSEPH J. MULAY *et al.*, Appellants, v. KATHERINE MULAY, Appellee.

*Opinion filed March 22, 2007.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

In this appeal, the circuit court of Peoria County found that the statute governing grandparent visitation, section 607(a–5) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/607(a–5) (West Supp. 2005)), is facially unconstitutional and dismissed the visitation petition. Prior to examining the propriety of that ruling, however, we must address the Attorney General's argument that the trial court improperly ruled on the constitutionality of the statute when nonconstitutional grounds were available. We agree with the Attorney General and accordingly vacate the trial court's decision, remanding the cause for further proceedings.

## I. BACKGROUND

Peoria County deputy sheriff James Mulay was killed in May 2003. He was survived by his wife, Katherine (mother), two sons (grandchildren), Joseph, born in 1999, and Jacob, born in 2002, and his parents, Joseph J. and Rita M. Mulay (grandparents). According to their petition, the grandparents visited and helped care for their grandchildren on a nearly daily basis before and after the death of their son. In 2005, the mother began to limit the time the grandparents were permitted to spend with their grandchildren. In June 2005, Michael Stessman, the mother's boyfriend, told the grandparents that they could not come to their grandchildren's home any longer and that they could see their grandchildren only at T-ball games. Although the grandparents sought mediation on the visitation issue, no mediation was ever scheduled or conducted.

The grandparents petitioned in the circuit court of Peoria County under the version of the grandparent visitation statute in effect on January 1, 2005 (750 ILCS 5/607(a–5) (West Supp. 2005)) for reasonable and liberal visitation similar to the visitation they had allegedly enjoyed in the past. The grandchildren were then ages two and five.

The mother filed a combined motion to dismiss pursuant to section 2–619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2–619.1 (West 2004)), alleging defects under both section 2–619(a)(9) (735 ILCS 5/2–619(a)(9) (West 2004)) and section 2–615 (735 ILCS 5/2–615 (West 2004)) of the Code. The section 2–619 portion of the motion alleged that section 607(a–5) of the Act unconstitutionally interfered with the mother's fundamental liberty interest as a fit parent in the care, custody, and control of her children and was unconstitutionally vague. The section 2–615 portion of the motion claimed that the petition was inadequate as a matter of law because it contained conclusory allegations unsupported by specific facts and did not allege that the mother was an unfit parent or that her visitation decisions were harmful to the children's physical, mental, or emotional health.

The grandparents filed a motion to amend their petition, accompanied by the proposed amended petition, and a response to the mother's motion to dismiss. The mother filed a memorandum of law supporting her motion to dismiss. The trial court subsequently entered

an agreed order, granting the grandparents leave to file an amended visitation petition. In their amended petition, the grandparents alleged that the mother's decision to allow them to see their grandchildren only at T-ball games constituted an unreasonable denial of visitation and was "harmful to the children's mental, physical, or emotional health." The petition contained no additional facts to support these allegations.

The grandparents also filed a memorandum of law responding to the constitutional challenges in the mother's motion to dismiss, and the mother filed a motion to reassert her prior motion to dismiss and supporting memorandum of law against the amended petition. The trial court asked the parties to submit joint answers to three factual questions. In response, the mother's attorney submitted a letter stating that: (1) James and the children's mother were married at the time of James' death; (2) a petition for dissolution had been filed and then dismissed approximately 15 months prior to James' death; and (3) no orders other than the voluntary dismissal of the dissolution petition had been filed before the grandparents filed their visitation petition.

At the trial court's request, the parties submitted briefs addressing two constitutional questions: (1) "[w]hether the Illinois Supreme Court in *Wickham* [*v. Byrne*, 199 Ill. 2d 309 (2002),] held that third party visitation simply is not of a compelling interest to ever warrant state intervention when parents are fit;" and (2) "[w]hether the Illinois Supreme Court in [*In re*] *R.L.S.*[, 218 Ill. 2d 428 (2006),] is interpreting *Troxel* [*v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000),] and thus *** third party intervention into a fit parent's decision making if and only if there is [a] standing requirement that presumes fitness."

In a written order granting the mother's motion to dismiss, the trial court did not address the section 2–615 portion of the motion. Instead, the court analyzed the section 2–619 claims, finding that the strict scrutiny standard applied to the constitutional questions because they implicated fundamental parental rights. The court acknowledged the statutory presumption that a fit parent's visitation decisions do not harm the child, but concluded that the statutory factors were not sufficiently narrow and deferential to a parent's superior rights to pass constitutional muster. The court also criticized the statute's failure to consider parental visitation preferences and the parent's physical and

mental health, stating that parental health affected the ability to make daily decisions, "i.e. fitness." Based on this analysis, the trial court believed that the revised statute contained some of the same flaws outlined in *Wickham*, 199 Ill. 2d at 321. In both statutes, the court believed the factors considered only affected the best interests of the child and allowed judges to usurp the role of parental decisionmaker.

Finally, the court stated that the statutory requirement that the denial of visitation be "unreasonable, even if it is not harmful," was "vague." The court added that reasonableness was determined by application of the statutory "best interest factors" and believed that the use of those factors in the prior version of the statute was found to be unconstitutional. Accordingly, the court found section 607(a–5) facially unconstitutional and granted the mother's motion to dismiss.

This court granted the grandparents' direct appeal (210 Ill. 2d R. 302(a)), as well as the request of the Attorney General (State) for leave to intervene (735 ILCS 5/2–408(c) (West 2004)).


## II. ANALYSIS

Before we may consider the constitutionality of section 607(a–5), we must first address a preliminary issue raised by the State. The State contends that the trial court prematurely reached the merits of the constitutional issue raised by the mother because the case could have been decided on nonconstitutional grounds. See *In re Application of the County Treasurer*, 214 Ill. 2d 253, 260 (2005). The State asserts that the trial court should have considered the sufficiency of the grandparents' petition as a matter of law under section 2–615, as argued in the mother's combined motion to dismiss, prior to addressing the constitutional questions raised under section 2–619 of her motion.

In *Bohnert v. Ben Hur Life Ass'n,* 362 Ill. 403, 408 (1936), this court declined to address the constitutional questions raised, explaining that "inasmuch as we have concluded that the complaint did not state a cause of action it becomes unnecessary to pass upon the constitutional questions or the validity of the statute." Since that time, we have repeatedly cited the general principle that courts will address constitutional issues only as a last resort, relying whenever possible on nonconstitutional grounds to decide cases. *In re E.H.*, No.

-4-

100202, slip op. at 4 (December 21, 2006) (listing cases). We strongly reaffirmed the continuing vitality of that principle in *In re E.H.*, slip op. at 4-5.

Here, the record shows that the mother filed a motion to dismiss the grandparents' original petition for visitation, alleging both constitutional grounds under section 2–619 and the petition's legal insufficiency under section 2–615. In her section 2–615 claim, she argued that the petition was, on its face, "substantially insufficient as a matter of law" because it was "*replete with conclusory allegations without supporting factual allegations as required to state a claim.*" (Emphasis added.) The mother next generally noted that conclusions of fact or law not supported by specific factual allegations are not admitted. In paragraph seven, she applied this principle, asserting that the "[p]etition fails to allege any specific factual allegations that Respondent is an unfit parent," and in paragraph 8, she argued that the "[p]etition fails to allege any specific factual allegations that [the mother's] actions and decisions regarding visitation times are harmful to the children's mental, physical, or emotional health."

In response, the grandparents filed a motion to amend their petition, and the trial court granted that motion "[u]pon stipulation and agreement of the parties." The mother then filed a motion seeking to have her original motion to dismiss and its supporting memorandum of law "adopted, reasserted and realleged" against the grandparent's amended visitation petition. In her motion, the mother noted the parties' agreement to allow the filing of the amended petition. She then stated that "[b]y further agreement of the parties, [her] Motion to Dismiss *** and [her] Memorandum of Law in Support thereof, would be adopted *** for [her] Motion and Memorandum of Law attacking the *amended* Petition for Visitation." (Emphasis in original.) Thus, the mother raised identical allegations in her motions to dismiss both the grandparents' *original* and *amended* petitions, attacking the legal sufficiency of the amended petition.

In its dispositive ruling on the mother's pending motion to dismiss, the trial court addressed only the constitutional claims under section 2–619. It did not consider or reference the mother's section 2–615 claim that the petition was facially insufficient as a matter of law for failing to allege facts to support the allegations. Thus, rather

than deciding the constitutionality of the statute "only as a last resort" (*In re E.H.*, slip op. at 4), the trial court decided the case without first evaluating the mother's nonconstitutional claims under section 2–615.

In response to the State's argument that the trial court should have first ruled on the section 2–615 motion to dismiss, the mother contends that the judge "essentially denied [the section] 2–615 motion and rendered it moot" in the final order. She claims that the trial court could have believed that the defects alleged in the motion were cured in the amended petition. The record is silent on the trial court's intentions in ruling on the section 2–619 motion prior to the section 2–615 motion. Without any support in the record, we will not presume that the trial court implicitly denied the mother's section 2–615 motion. In addition, the mother's claim does not address the legal effect of the particular defects claimed in her motion to dismiss.

The motion to dismiss argued that the petition was generally "replete with *conclusory allegations without supporting factual allegations* as required to state a claim." (Emphasis added.) In addition, it specifically noted that the "[p]etition fails to allege *any specific factual allegations* that [the mother] is *an unfit parent*" or that her conduct and visitation decisions "*are harmful to the children's mental, physical, or emotional health*." (Emphases added.) See *Dowd & Dowd, Ltd. v. Gleason*, 284 Ill. App. 3d 915, 929 (1996). While the trial court's constitutional analysis included the conclusion that "nothing in the statute addresses the parent's mental and physical health which is at the heart of a parent's ability to make and carry out the day-to-day child care decisions, i.e., fitness," that criticism was part of the court's strict scrutiny review. It cannot be reasonably construed to be an implicit denial of one of the mother's section 2–615 claims.

Moreover, the motion to dismiss cited the absence of any *specific facts* showing that the denial of visitation actually caused the children harm. The only pertinent change in the amended petition was the addition of the general allegation that the denial was "harmful to the children's mental, physical, or emotional health." This addition did not render moot the motion's section 2–615 allegation that the petition was inadequately supported by specific facts. The order also does not support the contention that the trial court implicitly denied

the section 2–615 claim. The order does not mention the section 2–615 allegations and does not determine the legal sufficiency of the grandparents' petition. Instead, it addresses only the facial constitutionality of section 606(a–5).

As we pointed out in *E.H.*, this court has adopted Supreme Court Rule 18(c)(4) (210 Ill. 2d R. 18(c)(4) (eff. September 1, 2006)), requiring a court to include a written statement that the case could not be decided on a nonconstitutional ground before finding a statute unconstitutional. *E.H.*, slip op. at 4. Although Rule 18(c)(4) was not in effect when the trial court entered its order, this court has long adhered to that principle. See *In re E.H.*, slip op. at 4-5 (listing cases). It is that principle that mandates the ruling in this case.

Lastly, the mother briefly argues that her fundamental parental rights have been infringed because the grandparents' petition has forced her to come into court to oppose it. Although the mother does not cite this court's decision in *Lulay v. Lulay*, 193 Ill. 2d 455, 474-75 (2000), for this contention, she cites *Lulay* in a similar, although considerably more complete, argument on the merits of the constitutional issue. Thus, we will review the mother's argument by examining the relevant language in *Lulay*.

In *Lulay*, a grandmother sought visitation with her grandchildren under a prior version of the statute at issue in this case. This court noted that filing a visitation petition required the parents to hire counsel and to present evidence defending their visitation decisions, necessarily diminishing their authority over the children and interfering with their decisionmaking rights. *Lulay*, 193 Ill. 2d at 474-75. Importantly, this court made that statement while analyzing the disputed issue of whether the constitutional challenge was reviewable under the rational basis or strict scrutiny tests. *Lulay*, 193 Ill. 2d at 473-76. This court did not categorically forbid any litigation that required a parental response because it constituted significant interference with the fundamental rights of parents. We merely recognized that due to the inherent burden that litigation over nonparental visitation places on parents' fundamental rights, strict scrutiny was the applicable test. *Lulay*, 193 Ill. 2d at 476.

In neither *Lulay* nor in *Wickham* did this court ever indicate that the burden imposed on parental rights by litigation over these issues was so great that the mere filing of a visitation petition was forbidden.

-7-

Indeed, in each case this court conducted a full analysis despite the significant interference with parental rights caused by the extensive litigation. *Wickham*, 199 Ill. 2d at 314-22; *Lulay*, 193 Ill. 2d at 476-80. Finally, there is no hint in either case that our long-standing guideline that constitutional questions are considered only when the case cannot be disposed of on alternative grounds is inapplicable in nonparental visitation cases. We reject the mother's contention that the application of that guideline in this case impermissibly interferes with her parental rights.

It remains the mandate of this court that constitutional issues be considered only when the case may not be decided on nonconstitutional grounds. *In re E.H.*, slip op. at 4-5. Here, the trial court prematurely examined the constitutional question raised in the mother's section 2–619 motion to dismiss before resolving the nonconstitutional issue in her section 2–615 motion. See *In re E.H.*, slip op. at 5. Accordingly, we vacate the trial court's order and remand the cause for further proceedings to consider the nonconstitutional issues raised in the pleadings.

### III. CONCLUSION

We hold that the mother's section 2–619 motion to dismiss based on the constitutional invalidity of section 607(a–5) of the Act cannot properly be considered prior to the trial court's ruling on the nonconstitutional grounds raised in her section 2–615 motion to dismiss. For this reason, the judgment of the circuit court of Peoria County is vacated and the cause remanded for further proceedings.

*Vacated and remanded.*