**SIXTH DIVISION**
**February 11, 2009**

No. 1-09-0952

| | | |
|---|---|---|
| ANDREA BARBER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CH 29860 |
| | ) | |
| | ) | |
| AMERICAN AIRLINES, INC., | ) | Honorable |
| | ) | Rita M. Novak, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

After plaintiff Andrea Barber filed a class action against defendant American Airlines, Inc., defendant moved quickly to refund the $40 baggage fee that plaintiff had paid in connection with her cancelled flight and that had been the subject of her class action suit. Citing the refund, the trial court found that there was no longer a controversy between the parties, and dismissed the suit pursuant to section 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-619 (West 2006). For the reasons discussed below, we reverse.

BACKGROUND

(1) Plaintiff's Complaint

Since a section 2-619 motion accepts as true all well-pleaded facts in the complaint and all reasonable inferences that can be drawn from those facts, we will provide the facts alleged by plaintiff in her complaint. Morr-Fitz, Inc. v. Blagojevich, 231 Ill. 2d 474, 488 (2008).

The complaint alleged that plaintiff "purchased a ticket number 100173579545115 for transportation on flight number 4414 to travel from Chicago O'Hare to White Plains [New York] on August 11, 2008." Plaintiff "checked in for the flight according to the procedures of the Defendant at O'Hare Airport and checked two suitcases for transport on her flight to White Plains, New York." At check-in, defendant required plaintiff "to pay an additional $40.00 to Defendant for transportation of her two suitcases to New York." Plaintiff alleged that "Defendant commenced charging passengers extra to transport their luggage on passenger flights on May 12, 2008."

The complaint further alleged that, at some point after check-in, defendant "canceled the subject flight." In response, plaintiff "requested a cancelation [sic] of her ticket and refund to the price of the subject airlines ticket and the $40.00

paid for transportation of her two suitcases from the Defendant's counter agent."

While defendant "authorized a refund of the price of the airline ticket," it "refused

to refund the $40.00 paid to transport her two suitcases."  Plaintiff alleged that she

"was told by Defendant's counter agent at O'Hare Airport that it is the policy and

practice of Defendant not to refund fees paid by ticket holders for transportation of

luggage in connection with a passenger flight when that flight is canceled by

Defendant and the passenger does not accept another flight."

In addition, the complaint alleged that defendant failed to disclose that it

would not refund the baggage fee if the flight was cancelled.  In support of this

allegation, plaintiff attached "Exhibit A" to her complaint.  The complaint stated

that "Exhibit A" was a "copy of Defendant's website Baggage Information."

Exhibit A appears to be a 2-page printout of a section from defendant's website

that is entitled "General Baggage Information." [1]

The "General Baggage Information" printout did not contain information

---

[1]The only copy of the complaint in the appellate record occurs as an attachment to defendant's motion to dismiss.  Exhibit A actually contains two items.  The second item appears to be a 3-page computer printout, from an unidentified source.  In its response to defendant's dismissal motion, plaintiff stated: "Defendant has attached to Plaintiff's Complaint (Exhibit A to Defendant's Motion to Dismiss) three pages of print out which are not part of Plaintiff's Complaint."

about a refund in case of a cancelled flight. The printout stated, in relevant part, that:

> "Customers who purchased domestic economy class
>
> tickets May 12, 2008 through June 14, 2008, may check
>
> one bag for free and check a second bag for $25 each
>
> way. Customers who purchased domestic economy class
>
> on or after June 14, 2008, will be charged $15 each way
>
> for the first checked bag and $25 each way for the
>
> second checked bag."

Since plaintiff's travel date was August 11 and she checked two items, the above-quoted policy required her to pay $15 for her first checked item, and $25 for her second checked item, for a total of $40 for the two checked items.

The complaint contained 2 counts: count I was breach of contract; and count II was a class action. In count I, plaintiff alleged that defendant's "failure to transport her two suitcases was a breach of contract and Plaintiff was entitled to a refund."

In count II, the class action count, plaintiff sought to bring this suit on behalf of "all other persons who (i) paid Defendant to have their luggage

4

transported in conjunction with passenger travel; (ii) Defendant canceled their flight; (iii) passenger requested a refund for the canceled flight and luggage fee; and (iv) they were denied a refund of the fee paid for luggage transport."

Plaintiff filed her complaint on August 15, 2008, four days after her flight was cancelled; and plaintiff served defendant with the complaint on August 21.

(2) Discovery

In an interrogatory dated September 29, 2008, plaintiff asked defendant to "[i]dentify persons receiving refunds for the ticket price on American Airlines or American Eagle flights canceled since June 15, 2008 who also paid baggage fees and did not receive a refund of the baggage fees and the amounts they each paid to transport their baggage."

On October 30, 2008, defendant filed a response to plaintiff's interrogatory, objecting to it on two grounds. Defendant claimed, first, that the interrogatory was "overly broad, unduly burdensome and will not lead to the discovery of relevant evidence"; and second, that it was "premature while American's Motion to Dismiss remains pending."

In a written order dated November 7, 2008, the trial court stated that "Defendant's objections to interrogatory is entered and continued." On January

28, 2009, plaintiff moved to compel discovery. In a written order dated February 26, 2009, the trial court denied plaintiff's motion to compel, and observed that defendant's motion to dismiss was pending.

(3) Defendant's Section 2-619 Motion to Dismiss

Defendant did not file its motion to dismiss until October 30, 2008. Although defendant was served on August 21, 2008, with a summons requiring it to file an answer or otherwise appear within 30 days, defendant did not file an appearance until October 6, 2008, and did not file its dismissal motion until October 30. 166 Ill. 2d 101(d) (defendant must "file his answer or otherwise file his appearance within 30 days after service, exclusive of the day of service"). Although defendant's appearance was filed well after the 30-day period, the appellate record contains no orders granting defendant an extension of its time to answer or otherwise appear.

In its motion, defendant moved to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure on the ground that there was some "affirmative matter *** defeating" plaintiff's complaint. 735 ILCS 5/2-619(a)(9) (West 2006). In essence, defendant's motion claimed, first, that plaintiff had received a full refund, pursuant to defendant's policy for refunding baggage fees on cancelled flights,

and thus her claim was now moot. Second, defendant claimed that the court had to dismiss plaintiff's complaint, due to plaintiff's alleged failure to attach the contract to her complaint. A plaintiff, who alleges breach of contract, is statutorily required to attach the contract at issue, to her complaint. 735 IlCS 5/2-606 (West 2006) ("[i]f a claim or defense is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit").

When considering a section 2-619 motion, a trial court may consider affidavits. Raintree Homes, Inc. v. Village of Long Grove, 209 Ill. 2d 248, 262 (2004). Thus, we will provide the information contained in the affidavits that defendant attached to its section 2-619 motion.

Defendant attached three affidavits from its employees: (1) Robert Trimm, a "Manager, Passenger Refund Services," whose department credited plaintiff's credit card with a refund on September 25, 2008; (2) John Terrelll, a "Senior Analyst for Support Services," who identified defendant's "Conditions of Carriage" that were current on plaintiff's date of travel; and (3) Debra Shaffer, an "Executive Office Manager," who reviewed plaintiff's complaint on September 4, 2008, and then immediately offered to refund plaintiff's baggage fees and possibly

court costs.

Specifically, Robert Trimm, a passenger refund manager, stated that on "September 25, 2008, my department processed a refund back to the original form of payment in the amount of $40.00 for ticket number 0012604558285"[2] and that "[t]his ticket was originally issued to Andrea Barber on August 11, 2008 for excess baggage charges." The refund thus occurred approximately a month after defendant was served with plaintiff's complaint. Trimm stated that he had attached, as an exhibit to his affidavit, a copy of the business record created by defendant to memorialize the refund.

John Terrelll, a "Senior Analyst for Support Services," stated that he had attached, as an exhibit to his affidavit, a document entitled "American Airlines Conditions of Carriage." He stated that he had "printed" this document on July 2, 2008, and that it was "a true and correct copy of American's Conditions of Carriage as it was available to airport agents on August 11, 2008." He further stated that this document "would have been made available to customers asking to review or for a copy of American's Conditions of Carriage" on August 11, 2008.

---

[2]This ticket number is different than the ticket number alleged in plaintiff's complaint, which was stated earlier in this opinion.

The "Conditions of Carriage" is 12 pages long, single spaced, and in small font. It contains sections concerning both baggage and refunds. It does not state anything specifically about a refund of baggage fees after a cancelled flight.[3] However, the document does state that "[a]s used in this contract, **ticket** means your passenger ticket and baggage check." (Bold print in original). The document further states that "[i]n the event the refund is required because of America's failure to operate on schedule or refusal to transport, the refund will be made directly to you -- (1)[i]f the ticket is totally unused, the full amount paid (with no service charge or refund penalty)." In this sentence, the word "ticket," as defined by the "Conditions" itself, means both the passenger ticket and the baggage check. Thus, the unused "ticket," which requires a full and automatic refund, includes both the unused passenger ticket and the unused baggage check.

Debra Shaffer, an "Executive Office Manager," stated that on September 4, 2008, she received a copy of plaintiff's complaint, she determined that plaintiff was entitled to a refund, and she informed plaintiff's counsel by telephone that defendant was "prepared to issue a refund." Shaffer stated that, in that same

---

[3]On March 10, 2009, defendant's counsel informed the trial court: "I can confirm, your Honor, that the refundability [sic] of baggage fees is not present in the – explicitly present in the contract."

9

telephone conversation on September 4, she also informed counsel that defendant "would consider paying the court costs that the Plaintiff had incurred to date." According to Shaffer, "[c]ounsel refused and advised [Shaffer] that the case would proceed as a class action."

In addition to the three affidavits, defendant also attached a letter, dated September 9, 2009, from defendant's counsel to plaintiff's counsel. The letter claimed that defendant's policy concerning baggage fee refunds was displayed on its website, in a section of the website entitled "FAQs." By stating that the policy was in a section entitled "FAQs," the letter appears to concede plaintiff's claim that the policy was neither in the "General Baggage Information" section of the website, which was provided as "Exhibit A" to plaintiff's complaint; nor in the "Conditions of Carriage" section, which defendant provided as an exhibit to Terrell's affidavit. The letter did not explain how a passenger, who was interested in a baggage fee refund, would be directed to the "FAQs" section.

Counsel's letter provided the "FAQs" web address, and claimed that defendant's refund policy was available at this address on the date of plaintiff's cancelled flight. The letter quoted the policy as stating " ' in situations where a customer has paid for checked bags but doesn't fly due to a flight cancellation or

schedule change, they may request a refund through American Airlines' refund process.' " In the letter, defendant's counsel stated that she attached a sheet which contained defendant's policy. This sheet stated that the passenger "may request a refund at the ticket counter before leaving the airport or mail the original baggage charge receipt" to defendant.

In her response to defendant's motion, plaintiff submitted an affidavit in which she reiterated some of the information already stated in her complaint, and in which she added that she had "not agreed to accept a refund of the $40.00 paid for the baggage transportation since this suit was filed on August 15, 2008."

In its reply, defendant claimed that "the contract that governed the plaintiff's air transportation was her ticket and American Airlines' Conditions of Carriage." Defendant claimed that plaintiff's complaint was fatally flawed for its failure to attach a copy of defendant's "Conditions of Carriage." Defendant also claimed that to succeed on her breach of contract claim, plaintiff had to prove that defendant violated its "Conditions of Carriage."

To its reply, defendant attached a second affidavit from employee John Terrelll, a senior analyst for airport services. His affidavit quoted the portion of the "FAQs" section that had previously been provided only in a letter from

11

No. 1-09-0952

counsel. Terrelll's affidavit also provided a "FAQs" web address for this information, but the address provided in Terrelll's affidavit was different from the address that counsel had provided in her September 29 letter.[4] Terrelll stated that this "Baggage Fee Refund Policy" was "publicly available on [defendant's] website on August 11, 2008." However, he stated that he had attached only "excerpts" from this policy to his affidavit.

Attached to Terrell's affidavit was a typed sheet entitled "Baggage Allowance," which stated in full:

"Q: If I pay a Checked Bag Fee but my flight is

cancelled so I don't fly, will I get a refund for the

Bag Fee?

A: Yes. In situations where a customer paid for

checked bags but doesn't fly due to a flight

cancellation or schedule change, they may request

---

[4]Counsel's September 29 letter had provided the following web address: http://www.aa.com/aa/pubcontent/en_US/utility/FAQs/customerService_FAQjsp# General%20Baggage%20Information. (Emphasis added.) The web address in Terrell's affidavit is the same through "customerService." After "customerService," the web address provided by Terrelll reads as follows: "/BaggageAllowancejsp." By contrast, counsel's letter read:"_FAQjsp#General%20Baggage%20Information."

12

a refund through American Airlines refund process. Note: the refund will not be initiated automatically.

You may request a refund at the ticket counter before leaving the airport or mail the original baggage charge receipt to:

American Airlines

[address omtted]

When mailing a refund request please include:

*The passenger's name

*Address

*The form of payment used (including the credit card number, if applicable)

*The ticket number(s)

*The date of travel

*The departure city and destination city

Remember to keep a copy of the baggage charge

receipt for your records. Please allow six to eight

weeks for processing."

The exhibit appeared to be a typed sheet, as opposed to Terrell's previously

submitted "Conditions of Carriage," which was clearly a printout from defendant's

website. The affidavit did not indicate how long the "Baggage Allowance"

section was, or where the quoted excerpt appeared in that section. The affidavit

also did not explain how someone seeking a refund for a baggage fee would know

to go to a section that was not labeled either "Refund" or "Baggage Fee," but

rather "Baggage Allowance."

(4) The Order Appealed From

In a written order dated March 10, 2009, the trial court stated that

"Defendant's motion to dismiss is granted for the reasons set forth on the record."

During the court proceeding on March 10, defendant orally asked the trial

court to dismiss for two reasons. First, defendant claimed that plaintiff's

complaint was deficient for not including her ticket, which defendant claimed was

the contract between plaintiff and defendant.  Second, defendant claimed that plaintiff's complaint was moot, since she had already received her refund, pursuant to a pre-existing policy.

Orally and in open court, the trial court stated that it granted defendant's motion on its second ground.  The trial court stated, in relevant part:

"[T]he question is, Does the plaintiff get a refund, And in this case, yes.  And she got it.  And she got it in very short order.  As soon as there was notice that, in fact – well, the complaint was filed. *** I think here what has been shown in the documents attached to the motion to dismiss is that there is a policy of refund and that the plaintiff got the refund.   I don't think that there is much more to this controversy.  And therefore, I am granting this motion to dismiss."

In the notice of appeal, dated April 8, 2009, plaintiff stated that she appealed from the order of [the trial judge] on March 10, 2009 granting Defendant's Motion to Dismiss the Complaint and denying Plaintiff leave to file an Amended Complaint."   The appellate record does not contain a motion by

plaintiff for leave to amend her complaint, either made in writing or made orally at the March 10 proceeding. This appeal followed.

ANALYSIS

The primary issue on this appeal is whether defendant's act of unilaterally posting a credit to plaintiff's credit card made plaintiff's claims moot.

The following facts appear to be undisputed; and they are also supported by the complaint and the affidavits submitted in the case at bar. Plaintiff purchased an airline ticket from defendant for travel on August 11, 2008, and paid defendant an additional $40 in baggage fees. Defendant cancelled her flight. After defendant received plaintiff's class action complaint, it determined that plaintiff was entitled to a refund of the $40 in baggage fees, and offered her a refund and a possible reimbursement of court costs, which she refused. Approximately a month after plaintiff's complaint was served on defendant, defendant unilaterally acted to credit plaintiff's credit card with the amount of the baggage fees. On the date of plaintiff's cancelled flight, defendant's claimed "Baggage Fee Refund Policy" was not available in either the "General Baggage Information" or the "Conditions of Carriage" sections of its website. The "Conditions of Carriage," which defendant claims was the contract between the parties, does not state anything specifically

16

about a baggage fee refund after a cancelled flight. However, the "Conditions of Carriage" does define the word "ticket," as used in that contract, to include both the passenger ticket and the baggage check, and the contract does provide for a full and automatic refund for such a "ticket" in case of a cancelled flight.

(1) Standard of Review

On appeal, plaintiff asks us to reverse the trial court's order, issued pursuant to section 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-619 (West 2006). "A motion to dismiss, pursuant to section 2-619 of the Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." DeLuna v. Burciaga, 223 Ill. 2d 49, 50 (2006); Solaia Technology LLC v. Specialty Publishing Co., 221 Ill. 2d 558, 579 (2006). For a section 2-619 dismissal, our standard of review is de novo. Solaia Technology, 221 Ill. 2d at 579, Morr-Fitz, 231 Ill. 2d at 488.

When reviewing "a motion to dismiss under section 2-619, a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." Morr-Fitz, 231 Ill. 2d at 488. In addition, "it is well-established that a cause of action should not be dismissed with

17

prejudice unless it is clear that no set of facts can be proved under the pleadings which would entitle plaintiffs to relief." <u>Morr-Fitz</u>, 231 Ill. 2d at 488. "In ruling on a motion to dismiss under section 2-619, the trial court may consider pleadings, depositions, and affidavits." <u>Raintree</u>, 209 Ill. 2d at 262. Even if the trial court dismissed on an improper ground, a reviewing court may affirm the dismissal, if the record supports a proper ground for dismissal. <u>Raintree</u>, 209 Ill. 2d at 262 (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record"); <u>In re Marriage of Gary</u>, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

(2) Timeliness of Section 2-619 Motion

"For a motion to be properly brought under section 2-619, the motion (1) must be filed 'within the time for pleading,' and (2) must concern one of nine listed grounds." <u>River Plaza Homeowner's Ass'n v. Healey</u>, 389 Ill. App. 3d 268, 275 (2009), quoting 735 ILCS 5/2-619(a) (West 2006).

We cannot determine whether the first requirement of a timely filing was satisfied, since we cannot determine from the appellate record whether defendant received an extension to file an answer or a dismissal motion.

However, we do not find defendant's motion defective on this ground for two reasons. First, plaintiff did not claim either at the trial level or on this appeal that defendant failed to file its section 2-619 motion "within the time for pleading." 735 ILCS 5/2-619(a) (West 2006). "Issues not raised are waived." River Plaza, 389 Ill. App. 3d at 275 (finding that plaintiff had waived the issue of whether certain defendants had filed a timely section 2-619 motion). Second, if there was something necessary and material that was missing from the appellate record, it was appellant's burden to provide it. Luss v. Village of Forest Park, 377 Ill. App. 3d 318, 331 (2007); Peleton, Inc. v. McGivern's, Inc., 375 Ill. App. 3d 222, 227 (2007); Smolinski v. Vojta, 363 Ill. App. 3d 752, 757 (2006).

(3) Substance of Section 2-619 Motion

The second requirement for a section 2-619 motion is that it must concern one of the nine grounds listed in section 2-619. River Plaza, 389 Ill. App. 3d at 275, quoting 735 ILCS 5/2-619(a) (West 2006). A section 2-619 motion is permitted only on the following grounds:

> "(1) That the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court

19

having jurisdiction.

(2) That the plaintiff does not have legal capacity to sue or that the defendant does not have legal capacity to be sued.

(3) That there is another action pending between the same parties for the same cause.

(4) That the cause of action is barred by a prior judgment.

(5) That the action was not commenced within the time limited by law.

(6) That the claim set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy.

(7) That the claim asserted is unenforceable under the provisions of the Statute of Frauds.

(8) That the claim asserted against defendant is unenforceable because of his or her minority or other disability.

(9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a) (West 2006).

Defendant's motion to dismiss does not concern: jurisdiction, legal capacity to sue, another pending action, res judicata, statute of limitations, statute of frauds or a minor plaintiff. Defendant moved pursuant to section (9), an "affirmative matter defeating the claim."

This court has repeatedly found that the question of whether a refund defeats the claim of a named plaintiff in a class action is a matter properly considered under section 2-619. Hayman v. Autohaus on Edens, Inc., 315 Ill. App. 3d 1075, 1077 (2000) (First District affirmed trial court's dismissal under section 2-619, where a corporate defendant refunded the fee at issue to the plaintiff consumer before the plaintiff had begun the class action litigation); Yu v. International Business MachinesCorp., 314 Ill. App. 3d 892, 897-98 (2000) (First District affirmed trial court's dismissal under section 2-619, where plaintiff accepted the requested relief from defendant before filing for class certification); see also Cohen v. Compact Power Systems, L.L.C., 382 Ill. App. 3d 104, 107

(2008) (First District affirmed trial court's dismissal under section 2-619). But see Arriola v. Time Insurance Co., 323 Ill. App. 3d 138, 140 (2001) (section 2-619 was the wrong section for a dismissal based on a class' lack of numerosity, after defendant provided refunds and obtained releases from 44 of the 46 putative class members). Even though the trial court dismissed on the "affirmative matter" of the refund, we could affirm the dismissal on the ground of the failure to attach the ticket or "Conditions of Carriage," if we found that to be an "affirmative matter defeating the claim." Thus, we will analyze both grounds.

### (4) The Refund

The "general rule" is that "if the defendant tenders to the named plaintiff [in a class action suit] the relief requested before the class is certified, the underlying cause of action must be dismissed as moot as there is no longer an actual controversy pending." Akinyemi v. JP Morgan Chase Bank, N.A., 391 Ill. App. 3d 334, 339 (2009) (citing in support six appellate court opinions).[5] However, if

___

[5] The six cited cases are all opinions by the First District within the last ten years, and are in chronological order: (1) Kostecki v. Dominick's Finer Foods, Inc., 361 Ill. App. 3d 362, 376-77 (2005); (2) Gelb v. Air Con Refrigeration & Heating, Inc., 356 Ill. App. 3d 686, 700 (2005) (Gelb II); (3) Bruemmer v. Compaq Computer Corp., 329 Ill. App. 3d 755, 763 (2002); (4) Arriola v. Time Insurance Co., 323 Ill. App. 3d 138, 150 (2001); (5) Yu, 314 Ill. App. 3d at 899 (2000); (6) Hillenbrand v. Meyer Medical Group, S.C., 308 Ill. App. 3d 381, 391

a plaintiff alleges that "defendant attempted to 'unfairly 'pick him off' in order to avoid suit, the key is when plaintiff filed his motion for class certification in relation to when defendant made tender." Akinyemi, 391 Ill. App. 3d at 340; Gelb v. Air Con Refrigeration & Heating, Inc., 326 Ill. App. 3d 809, 814 (2001) (Gelb I) ("question" is "whether the tender unfairly 'picked off' the prospective class action representative without offering him a [full] opportunity to develop his class action claim"). In that case, a "determination of whether defendants' tender has supplied plaintiff with all he requested is not the deciding factor." Gelb I, 326 Ill. App. 3d at 814. "Rather, *** the crux of the matter is to be resolved through an examination of when, in the life span of the suit at the trial level, such tender was made." Gelb I, 326 Ill. App. 3d at 340. "To hold otherwise would allow a party to avoid ever defending a class action suit by simply tendering payment to the named plaintiffs, in each class action filed against it, prior to the trial court's ruling on their motion for class certification." Hillenbrand, 308 Ill. App. 3d at 392, quoted with approval in Kostecki, 361 Ill. App. 3d at 377, Gelb II, 356 Ill. App. 3d at 700, Bruemmer, 329 Ill. App. 3d at 762, Gelb I, 326 Ill. App. 3d at 819, and Yu, 314 Ill.

_____

(1999). The court could have also cited, for the same proposition, the First District case of Cohen, 382 Ill. App. 3d at 1009 (2008).

No. 1-09-0952

App. 3d at 899.

When considering a "pick-off" allegation, a court must consider, first, whether the defendant even knew of the class action. Akinyemi, 391 Ill. App. 3d at 340-41; Cohen, 382 Ill. App. 3d at 110 (plaintiff's claim is not moot if "the timing of the defendant's tender" indicates that it "was an attempt to unfairly 'pick off' the class action representative without offering him a full opportunity to be heard."). For example, in Akinyemi, this court found no support for "plaintiff's allegation of an unfair pick-off" where defendant credited plaintiff's account before it had any notice of plaintiff's class action. Akinyemi, 391 Ill. App. 3d at 340-41. By contrast, in the case at bar, defendant credited plaintiff's account, approximately a month after it was served with defendant's class action complaint. Compare with Hayman v. Autohaus On Edens, Inc., 315 Ill. App. 3d 1075, 1077-78 (2000) (where a corporate defendant provided the consumer plaintiff with a refund of the full amount at issue -- a full month before the plaintiff had even filed his class action suit – plaintiff's claim was moot); Yu, 314 Ill. App. 3d at 899 (where plaintiff learned, before he sought to turn his claim into a class action, that defendant IBM offered a free upgrade to counter a Y2K problem, plaintiff's Y2K claim was moot).

24

Second, when a plaintiff makes a "pick-off" allegation, and a defendant's refund occurs before plaintiff's motion for class certification, a court must consider "whether, under the circumstances, the plaintiff exercised the required reasonable diligence in pursuing his class action claim." Akinyemi, 391 Ill. App. 3d at 341; Cohen, 382 Ill. App. 3d at 110 ("when the named plaintiff never files this motion [for class certification], the question becomes whether, under the circumstances, the plaintiff exercised the required reasonable diligence in pursuing his class action claim"); Arriola, 323 Ill. App. 3d at 152 ("the plaintiff must have a reasonable opportunity to file a motion for certification"). "While a plaintiff's due diligence must be determined on a case-by case basis, we feel that the interests of the absent class as well as the integrity of the judicial process, namely, allowing a plaintiff a reasonable opportunity to file a motion for certification, outweigh any concerns of whether plaintiff has been tendered the full amount of his claim or whether he has even filed a motion for certification." Gelb I, 326 Ill. App. 3d at 822 (we remanded in order to allow plaintiffs to move for certification, where the trial court had dismissed on mootness grounds, before plaintiffs had a reasonable opportunity to seek class certification), quoted in Gelb II, 356 Ill. App. 3d at 700, and Bruemmer, 329 Ill. App. 3d at 763-64.

If the plaintiff was not diligent, then "the plaintiff's class action complaint should be dismissed as moot." Akinyemi, 391 Ill. App. 3d at 341; Cohen, 382 Ill. App. 3d at 110 (if "the named plaintiff simply was not diligent in pursuing the class action claim," it "should be dismissed as moot"). For example, in Akinyemi, we found that plaintiff was not diligent, where "he waited more than a month [after filing his motion for certification] to even serve notice of this motion on defendant and then did nothing else to pursue certification within the next nine months," such as "conduct[ing] or serv[ing] any discovery to obtain the identities of any putative class members." Akinyemi, 391 Ill. App. 3d at 341. Compare with Gelb I, 326 Ill. App. 3d at 821 (plaintiff was diligent where he "attempted to initiate discovery" two weeks after filing his complaint but discovery was stayed and the trial court dismissed the complaint only "111 days" after it was filed). See also Cohen, 382 Ill. App. 3d at 113-14 (plaintiff was not diligent where he failed to file a certification motion or to conduct discovery during "the eight-month life span of this case"); Bruemmer, 329 Ill. App. 3d at 762 (plaintiff was not diligent where he did not file a certification motion "until approximately 15 months after"

defendant tendered a refund)[6]; Arriola, 323 Ill. App. 3d at 151 (plaintiff was not diligent in filing a certification motion, where there was "a lengthy delay" of 14 months between the start of the suit and defendant's motion to dismiss, and of another 6 months before the dismissal)[7].

In contrast to the Akinyemi plaintiff, plaintiff in the case at bar served discovery to obtain the identities of putative class members, only a month after having served defendant with her class action complaint. Gelb I, 326 Ill. App. 3d at 821 (plaintiff was diligent where, two weeks after the complaint, he "attempted to initiate" discovery concerning the putative class members, but it was stayed, and the case was dismissed a mere "111 days" after filing). On January 28, 2009, plaintiff moved to compel that discovery, presumably in anticipation of filing a certification motion and rebutting a claim of lack of numerosity. 735 ILCS 5/2-801(1) (to succeed on a motion for class certification, plaintiff must show that

---

[6]The appellate court in Bruemmer seemed to acknowledge that it was faced with a close case, when it acknowledged that it had reached its holding only by finding that "[t]he case at bar is more factually similar to Arriola than it is to Gelb." Bruemmer, 329 Ill. App. 3d at 764.

[7]In Arriola, we observed: "Had the defendant tendered payment to the named plaintiff early in the litigation and then sought to dismiss this action, the result would have been very different." Arriola, 323 Ill. App. 3d at 151-52. Of course, that is exactly what happened in the case at bar.

"[t]he class is so numerous that joinder of all members is impracticable"). On February 26, 2009, the trial court informed plaintiff that it was placing that issue on hold while defendant's dismissal motion was pending, and then the trial court granted the dismissal motion less than two weeks later. Only seven business days elapsed between the trial court's denial of plaintiff's motion to compel and the trial court's dismissal of the case. Seven days did not offer "a reasonable opportunity" to file a certification motion. Arriola, 323 Ill. App. 3d at 152 ("the plaintiff must have a reasonable opportunity to file a motion for certification"); Gelb I, 326 Ill. App. 3d at 822 (it was premature for a trial court to dismiss on mootness grounds, without first allowing plaintiffs "a reasonable opportunity to file a motion for [class] certification"). By seeking discovery promptly and filing a motion to compel it, plaintiff "exercised the required reasonable diligence" in pursuing her class action claim, under the circumstances of the case at bar. Akinyemi, 391 Ill. App. 3d at 341; Cohen, 382 Ill. App. 3d at 110. "[T]o hold otherwise would be to encourage plaintiffs to file class certification motions with the complaint," and thereby force trial courts to rule on certification, before any meaningful settlement discussion or discovery had taken place. Gelb I, 326 Ill. App. 3d at 822.

For these reasons, plaintiff's "pick-off" claim survives the tests articulated by this court in <u>Akinyemi</u> and related cases. Thus, defendant's unilateral act of crediting plaintiff's credit card did not make plaintiff's claim moot.

### (5) Other Exceptions to the Mootness Doctrine

Other exceptions to the mootness doctrine include (1) the " 'capable of repetition yet evading review' " exception; and (2) the public interest exception. <u>In re A Minor</u>, 127 Ill. 3d at 257-58. Neither one applies to the facts at bar.

To receive the benefit of the " 'capable of repetition yet evading review' " exception, the complainant must "demonstrate that (1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." <u>In re Barbara H.</u>, 183 Ill. 2d at 491, quoting without quotation marks, <u>In re A Minor</u>, 127 Ill. 2d at 258.

The criteria for the public interest exception are also well established. " 'In order to fall into the public interest exception (1) the question must be of a public nature; (2) an authoritative determination of the question must be desirable for the purpose of guiding public officers; and (3) the question must be likely to recur.' " <u>Filliung v. Adams</u>, 387 Ill. App. 3d 40, 56 (2008), quoting <u>Brown v. Duncan</u>, 361

No. 1-09-0952

Ill. App. 3d 125, 134 (2005).

Neither the repetition exception nor the public interest exception applies to the facts at bar. First, the "capable of repetition yet evading review" exception does not apply, because there is not "a reasonable expectation that the same complaining party would be subjected to the same action again." In re Barbara H., 183 Ill. 2d at 491. The plaintiff in the case at bar now has her own personal contact at American Airlines, who presumably would reimburse plaintiff immediately (if not sooner) if the same exact situation were to arise again. In addition, we could find that "the challenged action is in its duration too short to be fully litigated prior to its cessation," only if we presumed that it would be too short because American Airlines would move quickly to pick off any possible class representative. In re Barbara H., 183 Ill. 2d at 491, quoting without quotation marks, In re A Minor, 127 Ill. 2d at 258. If we were going to make that assumption, then that analysis is better made under the "pick-off" rules and cases, which are discussed in section 4 ("The Refund") of our opinion.

Second, the public interest exception does not apply, because "an authoritative determination of the question" is not "desirable for the purpose of guiding public officers." The officials of American Airlines are not public

30

officers. <u>Filliung</u>, 387 Ill. App. 3d at 56, quoting <u>Brown</u>, 361 Ill. App. 3d at 134.

(6) "Picking Off" Exception

For these reasons, the "picking off" exception is the mootness exception that most aptly applies to the facts at bar. This exception has been applied before to permit a class action to proceed, as we are doing here. <u>Gelb</u> I, 326 Ill. App. 3d at 822; <u>Hillenbrand</u>, 308 Ill. App. 3d at 392.

<u>Gelb</u> I is almost identical to the case at bar. It would be almost impossible for us to rule differently without abandoning <u>Gelb</u> I. In <u>Gelb</u> I, as in the case at bar, defendants tendered a settlement offer to the named plaintiffs, before plaintiffs had filed a motion for certification. <u>Gelb</u> I, 326 Ill. App. 3d at 811. In <u>Gelb</u> I, the tender occurred only a month and a half after suit was filed, and defendants then moved quickly to dismiss, claiming that their tender had mooted the case. <u>Gelb</u> I, 326 Ill. App. 3d at 811. Similarly, in the case at bar, the refund occurred only a month after suit was filed, and defendant moved to dismiss only a month after the refund. In <u>Gelb</u>I, we reversed the trial court's dismissal order, finding that it was premature to dismiss on mootness grounds, without first allowing plaintiffs "a reasonable opportunity to file a motion for [class] certification." <u>Gelb</u> I 326 Ill. App. 3d at 822. In <u>Gelb</u> I, we found that the plaintiff

31

was diligent where, two weeks after the complaint, he "attempted to initiate discovery" concerning the putative class members, but it was stayed. Gelb I, 326 Ill. App. 3d at 821. Similarly, in the case at bar, plaintiff served discovery to obtain the identities of putative class members, only a month after having served defendant with her class action complaint; but, as in Gelb I, it was stayed. In Gelb I, we remanded in order to allow plaintiffs to move for certification, which is the same exact action that we are taking in the case at bar. Gelb I, 326 Ill. App. 3d at 822.

Similarly, in Hillenbrand, this court reversed and remanded, with directions that the trial court rule on class certification prior to ruling on any motions "based on the theory of mootness." Hillenbrand, 308 Ill. App. 3d at 392. In Hillenbrand, defendant had tendered a settlement offer which would have made the named plaintiffs entirely whole. Hillenbrand, 308 Ill. App. 3d at 390. After the offer, defendant moved for summary judgment claiming that "as a result of [defendant's] tender of payment, the plaintiffs' remaining claims were moot, leaving them without standing to represent the purported class." Hillenbrand, 308 Ill. App. 3d at 385. We reversed the trial court's grant of summary judgment, stating that "[t]o hold otherwise would allow a party to avoid ever defending a class action by

simply tendering payment to the named plaintiffs." Hillenbrand, 308 Ill. App. 3d at 392. Similarly, in the case at bar, we reverse and remand to allow the trial court to rule on class certification.

### (7) Attaching Contract to Complaint

Second, defendant claimed that the trial court had to dismiss plaintiff's complaint, due to plaintiff's alleged failure to attach the contract to her complaint. As noted above, the trial court did not dismiss the complaint on this ground. Nonetheless, we will consider this ground, since we may affirm the trial court's section 2619 dismissal on any ground supported by the appellate record. Raintree, 209 Ill. 2d at 262 (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record")

A plaintiff, who alleges breach of contract, is statutorily required to attach the contract at issue, to her complaint. Section 2-606 of the Code of Civil Procedure provides that "[i]f a claim or defense is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit." 735 IlCS 5/2-606 (West 2006).

Plaintiff claimed that the trial court was statutorily required to dismiss due to plaintiff's failure to attach a contract. In support of its claim, defendant cited

No. 1-09-0952

Plocar v. Dunkin' Donuts of America, Inc., 103 Ill. App. 3d 740, 749 (1981), and

Cahill v. Eastern Benefit Systems, Inc., 236 Ill. App. 3d 517, 520 (1992).[8] Both

cases bear little resemblance to the case at bar.

In Plocar, the appellate court stressed that "the trial court [had] afforded the

plaintiffs three opportunities" to remedy the deficiencies in their complaint before

dismissing it. Plocar, 105 Ill. App. 3d at 750. In Plocar, plaintiffs had filed a total

of three complaints. Plocar, 105 Ill. App. 3d at 743. After plaintiffs filed their

original complaint, defendants filed a motion to dismiss on the ground that

plaintiffs had failed to attach the contract at issue, as required by our Code of Civil

Procedure. Plocar, 105 Ill. App. 3d at 743. The trial court granted defendant's

motion to dismiss, but simultaneously granted plaintiff a month to file an amended

complaint. Plocar, 105 Ill. App. 3d at 743. After plaintiffs filed an amended

complaint, defendants renewed their motion, and plaintiffs moved for leave to file

a second amended complaint, which the trial court allowed them. Plocar, 105 Ill.

_____

[8]In Cahill, defendant moved to dismiss pursuant to section 2-615, and the trial court granted the motion. Cahill, 236 Ill. App. 3d at 520. Since we do not affirm the dismissal on this ground, we take no position on whether a motion on this ground is properly brought under section 2-615, for failure to state a cause of action, or under section 2-619, due to some other affirmative matter. 735 ILCS 5/2-615, 2-619 (West 2006).

34

App. 3d at 743. After plaintiffs filed their second amended complaint – still with no contract -- the trial court granted defendant's motion, dismissing the complaint with prejudice. Plocar, 105 Ill. App. 3d at 743. The facts in Plocar remind us of the old adage: "three strikes and you're out." In Plocar, we affirmed the trial court, observing that "a party does not have a right to unlimited amendments," and that, at some point, "the trial court may bring the litigation to an end" when it believes that further amendments will not bear fruit. Plocar, 105 Ill. App. 3d at 750.

The facts in Cahill are similar to the facts in Plocar, except that the Cahill plaintiff was given five chances to attach the contract. In Cahill, plaintiff filed a total of five complaints, before the trial court dismissed the case. Cahill, 236 Ill. App. 3d at 518 (trial court dismissed plaintiff's fourth amended complaint, which would have been their fifth filed complaint). See also Alpha School Bus Co., Inc., v. Wagner, 391 Ill. App. 3d 722, 748 (2009) (trial court did not err in dismissing plaintiff's third amended complaint, which would have been their fourth filed complaint, "without giving them leave to amend" again); Bruemmer, 329 Ill. App. 3d at 757-58 (trial court did not err, when "[f]ollowing two [more] attempts to replead, the trial court dismissed plaintiff's third amended class action complaint

No. 1-09-0952

with prejudice").

In the case at bar, since the trial court exercised its discretion <u>not</u> to dismiss on this ground, and since a trial court on remand would have the discretion to grant plaintiff leave to amend, we believe that it is premature for us, as a court of review, to affirm the dismissal on this basis. <u>Plocar</u>, 103 Ill. App. 3d at 749 (the decision of whether to grant plaintiff leave to amend is left to the trial court's sound discretion); 735 ILCS 5/2-616(a) (West 2006) ("amendments may be allowed on just and reasonable terms").

### (8) Failure to State a Cause of Action

Defendant also claims that plaintiff failed to establish that defendant breached any contract term. A failure to state a cause of action is a claim properly brought pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2006); <u>Poo-Bah Enterprises, Inc., v. County of Cook</u>, 232 Ill. 2d 463, 471-72 (2009). In the case at bar, defendant moved to dismiss pursuant to only section 2-619 and the trial court ordered the case dismissed pursuant to that section. 735 ILCS 5/2-619 (West 2006). Sections 2-615 and 2-619 are very different sections and are not interchangeable. A section 2-615 motion asserts that the complaint failed to state sufficient facts which, if true, could entitle the

36

plaintiff to relief. Poo-Bah, 232 Ill. 2d at 471-72. In marked contrast, a section 2-619 motion admits the legal sufficiency of the complaint, but asserts that some other matter defeats the action. DeLuna v. Burciaga, 223 Ill. 2d 49, 50 (2006).

Although our Code of Civil Procedure permits a defendant to bring "a combined motion," it requires a combined motion to "be in parts." 735 ILCS 5/2-619.1 (West 2006). "Each part [of a combined motion] shall be limited to and shall specify that it is made under one of Sections 2-615, 2-619 or 2-1005," which concern, respectively, a motion to dismiss for failure to state a cause of action, a motion to dismiss due to some affirmative matter, and a motion for summary judgment. 735 ILCS 5/2-619.1 (West 2006), citing 735 ILCS 5/2-615, 2-619 and 2-1005 (West 2006), e.g. Heastie v. Roberts, 226 Ill. 2d 515, 525 (2007) (discussing a combined motion and its component parts). In the case at bar, defendant did not bring its motion in parts, labeled under different code sections. Defendant's motion was brought solely under section 2-619.

We will not analyze defendant's motion under section 2-615, where plaintiff has not once amended her complaint, where the trial court may have freely granted her leave to amend in order to correct any deficiency, where defendant did not move pursuant to section 2-615, and where the trial court did not analyze

37

defendant's motion on that basis. Mulay v. Mulay, 225 Ill. 2d 601, 611 (2007) (after holding that dismissal was improperly granted under section 2-619, our supreme court remanded so that the trial court could consider dismissal under section 2-615).

"A motion to dismiss pursuant to section 2-615 should not be granted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." Alpha, 391 Ill. App. 3d at 735. "As a general rule, a trial court should exercise its discretion liberally in favor of allowing amendments if doing so will further the ends of justice, and it should resolve any doubts in favor of allowing amendments." Alpha, 391 Ill. App. 3d at 748 (dismissal of plaintiff's third amended complaint was not an abuse of discretion). In the case at bar, if we permitted a dismissal under section 2-615, we would be robbing plaintiff of any opportunity to amend her complaint, which may have been relief that the trial court may have freely granted. C.f. Schwanke, Schwanke and Associates v. Martin, 241 Ill. App. 3d 738, 743-44 (1992) (dismissal must be vacated, if it was granted pursuant to a motion brought under the wrong section of the Code of Civil Procedure, and if it resulted in prejudice to plaintiff). See also Gelb I, 326 Ill. App. 3d at 822 (it was premature for a trial court to dismiss on mootness grounds,

No. 1-09-0952

without first allowing plaintiffs "a reasonable opportunity to file a motion for [class] certification").

CONCLUSION

For the foregoing reasons, we reverse the trial court's order dismissing the complaint pursuant to section 2-619 and remand for further proceedings consistent with this opinion. Based on the facts and circumstances of this case, we find that defendant's act of unilaterally posting a credit to plaintiff's credit card did not make plaintiff's claims moot.

Reversed and remanded.

J. GORDON, J., concurs.

CAHILL, P.J., dissents.

No. 1-09-0952

PRESIDING JUSTICE CAHILL, dissenting:

I respectfully disagree with the majority's conclusion that plaintiff can proceed on her class action claim despite defendant's full tender of damages and in the absence of a pending motion for class certification.

The facts of this case are controlled by Wheatley v. Board of Education of Township High School District 205, 99 Ill. 2d 481, 459 N.E.2d 1364 (1984). The plaintiffs there were two teachers who had been dismissed by the defendant board of education. Wheatley, 99 Ill. 2d at 483. The plaintiffs filed a class action complaint on behalf of 57 other teachers who had also been dismissed. Wheatley, 99 Ill. 2d at 483. Nearly one month after the complaint was filed, the board offered, and the two named plaintiffs accepted, reinstatement. Wheatley, 99 Ill. 2d at 483-84. The board moved to dismiss the complaint on mootness grounds four months later. Wheatley, 99 Ill. 2d at 484. The trial court granted the motion. Wheatley, 99 Ill. 2d at 484.

Our supreme court affirmed. Wheatley, 99 Ill. 2d at 487. The court held the claims of the named plaintiffs became moot when the board granted the relief demanded by the complaint–namely, reinstatement. Wheatley, 99 Ill. 2d at 485. Anticipating this finding, the plaintiffs argued in the alternative that the complaint was improperly dismissed because relief could still have been granted to the teachers who had not been offered reinstatement. Wheatley, 99 Ill. 2d at 484. The court rejected this argument on two grounds: (1) the named plaintiffs failed to move for class certification before the trial court ruled on the board's motion to dismiss; and (2) no remaining member of the class sought to substitute himself as the named representative. Wheatley, 99 Ill. 2d at 485-87.

40

No. 1-09-0952

An exception to Wheatley has slowly evolved in our appellate court. The exception, which the majority terms the "pick-off exception," has its origin in Arriola v. Time Insurance Co., 323 Ill. App. 3d 138, 751 N.E.2d 221 (2001). The court there relied on Wheatley in holding a class action cannot be sustained if the defendant tenders full damages to the named plaintiff before the plaintiff moves for class certification. Arriola, 323 Ill. App. 3d at 151. The court went on to say in *dicta* that had the named plaintiff moved for class certification early in the litigation, the result could have been different. Arriola, 323 Ill. App. 3d at 151-52. The court quoted this language from Susman v. Lincoln American Corp., 587 F.2d 866, 870 (7th Cir.1978): " 'If the class action device is to work, the courts must have a reasonable opportunity to consider and decide a motion for certification.' " Arriola, 323 Ill. App. 3d at 152; see also 735 ILCS 5/2-802 (West 2008). The Arriola court interpreted this language as implicitly holding that a class action plaintiff must be given a "reasonable opportunity" to move for class certification before the case can be dismissed. Arriola, 323 Ill. App. 3d at 152. Arriola has since been cited for the proposition that a class action suit should not be dismissed where the defendant tendered full payment to the named plaintiff before the plaintiff had a "reasonable opportunity" to move for certification of the class. See Gelb v. Air Con Refrigeration & Heating, Inc., 326 Ill. App. 3d 809, 821, 761 N.E.2d 265 (2001); Bruemmer v. Compaq Computer Corp., 329 Ill. App. 3d 755, 763-64, 768 N.E.2d 276, 283 (2002); Cohen v. Compact Power Systems, LLC, 382 Ill. App. 3d 104, 109-14, 887 N.E.2d 668 (2008); Akinyemi v. JP Morgan Chase Bank, N.A., 391 Ill. App. 3d 334, 340-42, 908 N.E.2d 163 (2009).

The exception to Wheatley developed through this line of cases has no basis in law.

41

Susman did not hold, as the Arriola court suggested, that a named plaintiff in a class action suit is entitled to a reasonable opportunity to move for class certification. The court was concerned with the *trial court's* opportunity to rule on class certification once a motion to dismiss has been filed. Susman, 587 F.2d at 870. The court's holding was limited "to the fairly narrow situation where a motion for certification has been pursued with reasonable diligence *and is pending when a tender is made*." (Emphasis added.) Susman, 587 F.2d at 871 n.4.

The majority cites public policy concerns in allowing a defendant to prevent class action litigation by "picking-off" the named plaintiff before there is an opportunity to protect the interests of absent class members by moving for certification. But there is no prohibition against settlements with class members as long as the rights of nonsettling class members are not affected. Jankousky v. Jewel Cos., 182 Ill. App. 3d 763, 767, 538 N.E.2d 689 (1989) (noting that public policy favors and encourages settlements). There is no suggestion here that defendant's refund to plaintiff affected the rights of others who did not receive similar refunds. Presumably, the remaining class members can either pursue class litigation or bring their claims individually. Indeed, this class action could have survived had one of the nonsettling class members substituted himself as the named representative. See Wheatley, 99 Ill. 2d at 487.

Plaintiff had 207 days, from the time the complaint was filed until the time the trial court ruled on defendant's motion to dismiss, to file a motion for class certification. She failed to do so. I would affirm the trial court's dismissal under Wheatley.